******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* TAUREN
WILLIAMS-BEY
(AC 37430)

Lavine, Beach and Alvord, Js.

*Argued May 26—officially released August 23, 2016*

(Appeal from Superior Court, judicial district of
Hartford, Clifford, J. [judgment]; Alexander, J. [motion
to correct illegal sentence].)

*Heather Clark*, assigned counsel, for the appellant
(defendant).

*Michele C. Lukban*, senior assistant state's attorney,
with whom, on the brief, were *Gail P. Hardy*, state's
attorney, *Vicki Melchiorre*, senior assistant state's attor-
ney, and *Melissa E. Patterson*, assistant state's attor-
neys, for the appellee (state).

*Opinion*

LAVINE, J. In recent years, the United States and Connecticut Supreme Courts have made major changes in the jurisprudence relating to juvenile sentencing. The law now requires that juvenile offenders facing life without parole or its functional equivalent are entitled to individual consideration that takes into account the mitigating factors of their youth. This case concerns the important question of where such consideration must be given for juvenile offenders who were sentenced prior to the recent developments in the law. Must it be in the context of a resentencing proceeding, as the defendant claims? Or may it be in the setting of a parole hearing, as the state asserts? We conclude, for the reasons that follow, that a parole hearing provides the class of juveniles under consideration with a constitutionally adequate, pragmatic, and fair opportunity to gain consideration of the mitigating factors of their youth.

The defendant, Tauren Williams-Bey, appeals from the trial court's dismissal of his motion to correct an illegal sentence. The defendant claims that the court erred by concluding that it did not have jurisdiction over his motion after determining that his sentence did not violate the eighth amendment to the United States constitution and article first, §§ 8 and 9, of the constitution of Connecticut. We conclude that the trial court improperly determined that it lacked jurisdiction to consider the defendant's motion, but properly concluded that the defendant's federal and state constitutional rights have not been violated. The defendant's rights have not been violated because, as will be discussed, he will be entitled to have the mitigating factors of his youth considered at a parole hearing pursuant to a recently enacted Connecticut statute and a recently decided United States Supreme Court case. We affirm the conclusion of the trial court as to the defendant's constitutional claims, albeit on alternative grounds. See, e.g., *State* v. *Brown*, 242 Conn. 389, 395, 699 A.2d 943 (1997). The form of the judgment is improper and we remand the case with direction to render judgment denying the defendant's motion to correct an illegal sentence. See, e.g., *State* v. *Gemmell*, 155 Conn. App. 789, 790, 110 A.3d 1234, cert. denied, 316 Conn. 913, 111 A.3d 886 (2015).

The following facts and procedural history are relevant to this appeal. On December 20, 1997, the defendant and two friends jumped out of a van and shot at the victim, killing him. At the time, the defendant was sixteen years old. The state charged the defendant with murder as an accessory, in violation of General Statutes (Rev. to 1997) § 53a-54a and General Statutes § 53a-8, and with conspiracy to commit murder, in violation of General Statutes (Rev. to 1997) § 53a-54a and General Statutes § 53a-48. On January 4, 2000, the defendant

pleaded guilty to murder as an accessory in violation of General Statutes (Rev. to 1997) § 53a-54a.[1] The court accepted the parties' waiver of the presentence investigation report and continued the case for sentencing. On February 25, 2000, the court, *Clifford, J.*, sentenced the defendant to thirty-five years in prison. At the time of sentencing, the crime of which the defendant was convicted made him ineligible for parole. General Statutes (Rev. to 1997) § 54-125a (b) (1). If he were to serve the full sentence, the defendant would not be released until he is fifty-two years old.

The defendant filed a motion to correct an illegal sentence on December 16, 2013, asserting that his sentence violated the eighth amendment as explicated in *Graham* v. *Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), and *Miller* v. *Alabama*, U.S. , 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). The defendant filed an amended motion to correct on April 2, 2014. In the amended motion, the defendant claimed that his sentence violated the eighth amendment because "the sentence and the manner in which it is imposed fails to provide for a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation . . . ." The court, *Alexander, J.*, heard oral argument on the motion on April 2, 2014, and issued a written memorandum of decision on July 29, 2014. At the time, neither *State* v. *Riley*, 315 Conn. 637, 110 A.3d 1205 (2015), cert. denied, U.S. , 136 S. Ct. 1361, 194 L. Ed. 2d 376 (2016), nor *Casiano* v. *Commissioner of Correction*, 317 Conn. 52, 115 A.3d 1031 (2015), cert. denied sub nom. *Semple* v. *Casiano*, U.S. , 136 S. Ct. 1364, 194 L. Ed. 2d 376 (2016), Connecticut's leading cases on juvenile sentencing, had been decided. *Riley* and *Casiano* applied *Miller* retroactively to discretionary life without parole sentences and term of years sentences that are the functional equivalent of life sentences.[2] The trial court concluded that because the defendant was not serving a mandatory life without parole sentence, *Graham* and *Miller* were inapplicable. It dismissed the motion, concluding that "the defendant's case does not fall within the narrow confines of *Graham* or *Miller*, and the relief sought exceeds the jurisdiction of this court."

We conclude that the defendant's sentence does not violate the eighth amendment as interpreted by *Miller* v. *Alabama*, supra, 132 S. Ct. 2469. Furthermore, we conclude that even if the sentence violated the eighth amendment pursuant to *Miller*, in light of the United States Supreme Court's decision in *Montgomery* v. *Louisiana*, U.S. , 136 S. Ct. 718, 736, 193 L. Ed. 2d 599 (2016), which decided that conferring parole eligibility on a juvenile offender is a constitutionally adequate remedy for a sentence that violates *Miller*'s teachings upon retroactive application, and the fact that the defendant will be parole eligible under § 1 of No. 15-84 of the 2015 Public Acts (Public Act 15-84), codified

at General Statutes § 54-125a (f), the defendant and those similarly situated have been provided with a constitutionally adequate remedy. In reaching this conclusion we address (1) the recent changes in the law regarding juvenile sentencing, (2) the trial court's jurisdiction over the motion to correct, (3) whether, assuming the defendant's thirty-five year without parole sentence violated the constitutional principles defined in *Miller*, his eligibility for parole under § 54-125a (f), rather than resentencing, is a constitutionally adequate remedy under the eighth amendment to the United States constitution; and (4) whether parole eligibility, rather than resentencing, is a constitutionally adequate remedy under the constitution of Connecticut. Due to the somewhat complex nature of the issues presented, a detailed analysis is required.

I

LAW REGARDING JUVENILE SENTENCING

We first discuss the law regarding juvenile sentencing, as the law in this rapidly evolving area has changed since the defendant filed his motion to correct. The eighth amendment of the United States constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." This provision is applicable to the states through the due process clause of the fourteenth amendment. See *Furman* v. *Georgia*, 408 U.S. 238, 239–40, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972). In *Miller*, the United States Supreme Court held that sentencing schemes imposing mandatory life without parole sentences on juveniles convicted of homicide offenses violate the eighth amendment. *Miller* v. *Alabama*, supra, 132 S. Ct. 2469. In *Graham* v. *Florida*, supra, 560 U.S. 74, the court had determined that imposing mandatory sentences of life imprisonment without the possibility of parole on juvenile offenders convicted of nonhomicide crimes likewise constitutes cruel and unusual punishment.[3] Specifically, *Miller* requires that prior to sentencing juveniles to life without parole, a judicial authority must "take into account how children are different [from adults], and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Miller* v. *Alabama*, supra, 2469. Thus, juvenile offenders facing life without the possibility of parole are entitled to an individualized sentencing that considers the mitigating factors of their youth.

Our Supreme Court has determined that "the holding in *Miller* implicates not only mandatory sentencing schemes, but also discretionary sentencing schemes that permit a life sentence without parole for a juvenile offender but do not mandate consideration of *Miller*'s mitigating factors." *Casiano* v. *Commissioner of Correction*, supra, 317 Conn. 72. Thus, in Connecticut, *Miller* applies to discretionary sentences and term of years sentences that are functionally equivalent to life

without parole. Our Supreme Court has addressed what constitutes a functional life without parole sentence. In *State* v. *Riley*, supra, 315 Conn. 641, our Supreme Court concluded that an aggregate sentence of 100 years without parole imposed on a juvenile offender violates *Miller*, and remanded the case for resentencing with consideration of the factors identified in *Miller*.[4] Our Supreme Court has concluded that *Miller* applies in both direct and collateral review sentencing appeals. See id. (direct appeal); *Casiano* v. *Commissioner of Correction*, supra, 54–55 (habeas appeal). The defendant in *Casiano*, whose case was on collateral review, was sentenced to fifty years without parole. In reaching its conclusion that a sentence of fifty years without parole violates *Miller*, the court rejected the "notion that, in order for a sentence to be deemed life imprisonment, it must continue until the literal end of one's life." (Internal quotation marks omitted.) *Casiano* v. *Commissioner of Correction*, supra, 73, 75. The court remanded the case for resentencing.

*Riley* and *Casiano* also dealt with claims brought under *Graham* v. *Florida*, supra, 560 U.S. 48. As our Supreme Court has explained: "*Graham* precludes the [judicial authority] from determining at the outset that a juvenile nonhomicide offender is beyond rehabilitation, [and] thus requir[es] that such offenders be afforded a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation if sentenced to life imprisonment." *State* v. *Riley*, supra, 315 Conn. 661. Because *Graham* specifically applied to nonhomicide offenses, our Supreme Court in *Riley* declined to consider that defendant's *Graham* claim that he was entitled to a "second look." Id., 663.

In *Riley*, which involved a direct appeal, our Supreme Court concluded that the *Graham* claim was not ripe, and that legislation regarding the " 'means and mechanisms for compliance' with the dictates of *Graham*" was pending in our legislature. Id., 662. In *Casiano*, our Supreme Court declined to consider the habeas petitioner's *Graham* claim and deferred to the legislature, stating that it had "every reason to expect that [its] decisions in *Riley* and [*Casiano*] will prompt our legislature to renew earlier efforts to address the implications of the [United States] Supreme Court's decisions in *Graham and Miller*." (Emphasis added.) *Casiano* v. *Commissioner of Correction*, supra, 317 Conn. 79.

There have been two extremely significant changes in the law regarding juvenile sentencing at the state and federal level since our Supreme Court decided *Riley* and *Casiano*: our legislature's enactment of Public Act 15-84 and the United States Supreme Court's decision in *Montgomery* v. *Louisiana*, supra, 136 S. Ct. 718. On October 1, 2015, Public Act 15-84, codified in part at §§ 54-91g and 54-125a (f), which was entitled "An Act

Concerning Lengthy Sentences for Crimes Committed by a Child or Youth And the Sentencing of a Child or Youth Convicted of Certain Felony Offenses," became effective. This public act was our legislature's direct response to *Miller*, *Graham*, *Riley*, and *Casiano*. See, e.g., 58 S. Proc., Pt. 8, 2015 Sess., p. 2644, remarks of Senator John A. Kissel. It provides parole eligibility for juveniles sentenced to greater than ten years incarceration prior to *Miller* and *Graham*,[5] and also provides prospective sentencing procedures that bring Connecticut into compliance with the requirements of *Graham* and *Miller* going forward.[6] Under § 54-125a (f), a juvenile offender serving a sentence of greater than ten years incarceration on or after October 1, 2015, will be parole eligible. If the sentence is fifty years incarceration or less, the juvenile becomes parole eligible after serving 60 percent of his or her sentence, or twelve years, whichever is greater. If the sentence is greater than fifty years, the juvenile offender becomes parole eligible after serving thirty years. The statute also requires the parole board to consider whether "*such person has demonstrated substantial rehabilitation since the date such crime or crimes were committed considering such person's character, background and history, as demonstrated by factors, including, but not limited to . . . the age and circumstances of such person as of the date of the commission of the crime or crimes, whether such person has demonstrated remorse and increased maturity since the date of the commission of the crime or crimes . . . obstacles that such person may have faced as a child or youth in the adult correctional system, the opportunities for rehabilitation in the adult correctional system and the overall degree of such person's rehabilitation considering the nature and circumstances of the crime or crimes.*" (Emphasis added.) General Statutes § 54-125a (f) (4) (C). These criteria substantially encompass the mitigating factors of youth referenced in *Miller* and *Riley*. See footnote 4 of this opinion. Furthermore, the statute ensures that indigent juvenile offenders will have the right to counsel in obtaining, in the terminology of *Graham*, a "meaningful opportunity to obtain release." *Graham* v. *Florida*, supra, 560 U.S. 75. Overall, the legislature not only gave *Miller* retroactive application, but also effectively eliminated life without the possibility of parole, even as a discretionary sentence, for juvenile offenders in Connecticut.

Also of great significance is the fact that the United States Supreme Court has substantially refined its holding in *Miller* since our Supreme Court decided *Riley* and *Casiano*. In *Montgomery* v. *Louisiana*, supra, 136 S. Ct. 718, decided on January 25, 2016, the United States Supreme Court held that *Miller* applies retroactively upon collateral review to all juvenile offenders serving mandatory life without parole sentences because *Miller* announced a substantive rule of consti-

tutional law.[7] Id., 734. The court also recognized that the substantive rule in *Miller* had procedural components regarding the factors that the judicial authority must consider. It stated that "*Miller* requires [the judicial authority] to consider a juvenile offender's youth and attendant characteristics before determining that life without parole is a proportionate sentence." Id. The court noted that "[t]he foundation stone for *Miller*'s analysis was [the] Court's line of precedent holding certain punishments disproportionate when applied to juveniles." (Internal quotation marks omitted.) Id., 732. The court reiterated that because of children's decreased culpability and greater ability to reform, "*Miller* recognized that the distinctive attributes of youth diminish the penological justifications for imposing life without parole on juvenile offenders." (Internal quotation marks omitted.) Id., 733. "*Miller*, then, did more than require [the judicial authority] to consider a juvenile offender's youth before imposing life without parole; it established that the penological justifications for life without parole collapse in light of the distinctive attributes of youth." (Internal quotation marks omitted.) Id., 734.

The United States Supreme Court, however, also recognized in *Montgomery* the practical limitations in remedying sentences that violated *Miller* upon its retroactive application. Juvenile offenders whose sentences violate *Miller* upon retroactive application did not have the opportunity to demonstrate the mitigating factors of youth at the time of sentencing. The court emphasized that this violation of *Miller* could be remedied by affording those juvenile offenders parole eligibility, thus providing, in the context of *Graham*, a meaningful "opportunity for release . . . ." Id., 736. The court also emphasized that "[g]iving *Miller* retroactive effect . . . does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole. *A State may remedy a Miller violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them.* See, e.g., Wyo. Stat. Ann. § 6-10-301 (c) (2013) (juvenile homicide offenders eligible for parole after [twenty-five] years). Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment.

"Extending parole eligibility to juvenile offenders does not impose an onerous burden on the States, nor does it disturb the finality of state convictions. Those prisoners who have shown an inability to reform will continue to serve life sentences. *The opportunity for release* will be afforded to those who demonstrate the truth of *Miller*'s central intuition—that children who commit even heinous crimes are capable of change."

(Emphasis added.) *Montgomery* v. *Louisiana*, supra, 136 S. Ct. 736. It is within this legal framework that we address the defendant's specific claims.

## II

## JURISDICTION

We first address the issue of whether the trial court had jurisdiction over the defendant's motion to correct an illegal sentence. The trial court dismissed the defendant's motion to correct for lack of jurisdiction. The defendant appealed, claiming (1) that the trial court erred in concluding that it lacked jurisdiction to consider his *Miller* claim; (2) that the trial court erred in concluding that it lacked jurisdiction to consider his *Graham* claim;[8] and (3) that the court erroneously concluded that the defendant's sentence did not violate the eighth amendment and the constitution of Connecticut. We agree that the trial court erred in concluding that it lacked jurisdiction.

"Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ." (Internal quotation marks omitted.) *Ajadi* v. *Commissioner of Correction*, 280 Conn. 514, 533, 911 A.2d 712 (2006). "A determination of whether the trial court has jurisdiction to consider a motion to correct an illegal sentence filed pursuant to Practice Book § 43-22 presents a question of law, and, therefore, our review is plenary." *State* v. *Henderson*, 130 Conn. App. 435, 443, 24 A.3d 35 (2011), appeal dismissed, 308 Conn. 702, 66 A.3d 847 (2013) (certification improvidently granted).

Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner." "An illegal sentence is essentially one which either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is inherently contradictory. . . . Sentences imposed in an illegal manner have been defined as being within the relevant statutory limits but . . . imposed in a way which violates the defendant's right . . . to be addressed personally at sentencing and to speak in mitigation of punishment . . . or his right to be sentenced by a judge relying on accurate information or considerations solely in the record, or his right that the government keep its plea agreement promises . . . ." *State* v. *Logan*, 160 Conn. App. 282, 287, 125 A.3d 581 (2015), cert. denied, 321 Conn. 906, 135 A.3d 279 (2016).

The trial court concluded that it lacked jurisdiction because, at the time, *Miller* and *Graham* did not clearly apply to lengthy term of years sentences, and "the relief

sought exceeds the jurisdiction of this court." In reviewing the defendant's pleadings, however, the motion challenged the manner in which the sentence was imposed, namely, that the court did not consider the *Miller* factors during sentencing and whether the defendant was entitled to a later meaningful opportunity for release. Because the motion to correct challenged the manner in which the sentence was imposed, the defendant's claim was properly raised by a motion to correct pursuant to Practice Book § 43-22. See *State v. Bozelko*, 154 Conn. App. 750, 758–59, 108 A.3d 262 (2015) (allegations of procedural violations in sentencing properly raised in motion to correct pursuant to Practice Book § 43-22). The court's conclusion that it could not provide the defendant a remedy did not implicate the court's authority to determine whether the sentence had been imposed in an illegal manner. It is clear from the trial court's memorandum of decision, however, that the court, prior to dismissing the motion, considered the merits of the defendant's *Miller* and *Graham* claims, and concluded that the defendant's sentence was not illegal.[9] In parts III and IV of this opinion, we address why the trial court properly concluded that the defendant's sentence was not illegal, albeit for a different reason than the trial court. "[An appellate court] can sustain a right decision although it may have been placed on a wrong ground." (Internal quotation marks omitted.) *LaBow* v. *LaBow*, 69 Conn. App. 760, 761 n.2, 796 A.2d 592, cert. denied, 261 Conn. 903, 802 A.2d 853 (2002). Accordingly, we conclude that the trial court did not lack jurisdiction over the defendant's motion to correct an illegal sentence and that the proper disposition was for the court to deny, rather than to dismiss, the defendant's motion to correct.

### III

### FEDERAL CONSTITUTIONAL CLAIM

We next address the defendant's claim that his sentence of thirty-five years imprisonment violates the eighth amendment of the United States constitution because it was imposed without consideration of the factors listed in *Miller* v. *Alabama*, supra, 132 S. Ct. 2455. We note that, pursuant to § 54-125a (f), which the legislature enacted after the defendant filed the present appeal, the defendant *will be parole eligible* after serving 60 percent of his sentence, which is twenty-one years.[10] Thus, the actual issue before this court is whether parole eligibility is a constitutionally adequate remedy if the imposition of the defendant's thirty-five year sentence without parole required the procedures set forth in *Miller*.[11] The defendant asserts that, notwithstanding that he will be parole eligible under § 54-125a (f), his case must be remanded for resentencing with consideration of the *Miller* factors as our Supreme Court ordered in *Riley* and *Casiano*. He asserts that

parole eligibility is a constitutionally inadequate remedy because (1) the language in *Montgomery* that parole eligibility is constitutionally adequate to remedy a *Miller* violation is dicta, and (2) *Montgomery* is at odds with our own Supreme Court's holdings in *Riley* and *Casiano* and our legislature's intent in enacting Public Act 15-84.[12] We conclude that, for juvenile offenders who were entitled to be, but were not, sentenced with consideration of the mitigating factors of youth as required by *Miller*, § 54-125a (f) offers a constitutionally adequate remedy under the eighth amendment to those who qualify for parole under its provisions. Our review of the defendant's constitutional claims is plenary. See *State* v. *Long*, 301 Conn. 216, 236, 19 A.3d 1242, cert. denied,     U.S.    , 132 S. Ct. 827, 181 L. Ed. 2d 535 (2011).

A

We first address the defendant's claim that the United States Supreme Court's statement that parole eligibility will remedy a *Miller* violation is dicta, and, regardless, is at odds with our Supreme Court's rationale regarding *Miller* as set forth in *State* v. *Riley*, supra, 315 Conn. 637, and *Casiano* v. *Commissioner of Correction*, supra, 317 Conn. 52. We are not persuaded.

Black's Law Dictionary (9th Ed. 2009) defines "obiter dictum" as "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential . . . ." See also *Remax Right Choice* v. *Aryeh*, 100 Conn. App. 373, 378, 918 A.2d 976 (2007) (statements by court that are not germane to holding are dicta and not binding precedent). Dicta of the United States Supreme Court, however, is persuasive authority. See *United States* v. *Dorcely*, 454 F.3d 366, 375 (D.C. Cir.) ("carefully considered language of the [United States] Supreme Court, even if technically dictum, generally must be treated as authoritative" [internal quotation marks omitted]), cert. denied, 549 U.S. 1055, 127 S. Ct. 691, 166 L. Ed. 2d 518 (2006). This is especially so in this case, in which we consider a federal constitutional claim. See *State* v. *Kimbro*, 197 Conn. 219, 235, 496 A.2d 498 (1985) ("we recognize, as we must, the authority of the United States Supreme Court to act as the final arbiter of controversies arising under the United States constitution"), overruled in part on other grounds by *State* v. *Barton*, 219 Conn. 529, 544, 594 A.2d 917 (1991).

It is true that the Supreme Court granted certiorari in *Montgomery* to determine only whether the court had jurisdiction over the defendant's claim and whether *Miller* applied retroactively. *Montgomery* v. *Louisiana*, supra, 136 S. Ct. 725, 727. The court, though, had to have recognized that *Miller*'s retroactive application would potentially affect thousands of cases across several states and that the logical extension of its holding would require state legislatures and courts to fashion

a constitutionally adequate remedy for sentences that violated *Miller*. It thus is illogical to categorize *Montgomery*'s conclusion that *Miller* applies retroactively as the holding of the court, but its pronouncement of a constitutionally adequate remedy in light of *Miller*'s retroactive application as not being germane to that holding, and, thus, mere dicta. We do not believe that the United States Supreme Court would so glibly identify a constitutionally adequate remedy under the eighth amendment. Moreover, as noted, the court in *Montgomery* stated unequivocally that "[a] State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." *Montgomery* v. *Louisiana*, supra, 736. The court could hardly have been clearer. We conclude that parole eligibility is an adequate remedy for sentences that violated *Miller* as applied retroactively.

B

Nevertheless, the defendant suggests that this court cannot follow *Montgomery* regarding parole eligibility as a constitutionally adequate remedy for a *Miller* violation because, in doing so, we would implicitly be overruling our own Supreme Court. The defendant argues that because *Riley* and *Casiano* treated the claims raised under *Miller* and *Graham* as distinct claims, we are required to reject *Montgomery* to the extent that it concludes that providing a "meaningful opportunity to obtain release" under *Graham*, in this case parole eligibility, will remedy a *Miller* violation. He thus asserts that he is constitutionally entitled to be resentenced like the defendants in *Riley* and *Casiano*. We find this argument to be convoluted and reject it.

Although our Supreme Court remanded *Riley* and *Casiano* for resentencing pursuant to *Miller*, at the time it did so, *Montgomery* had not yet been decided. In other words, *Montgomery* significantly changed the legal landscape under which *Riley* and *Casiano* were decided. In *Riley* and *Casiano*, our Supreme Court did not have the opportunity to consider parole eligibility as a remedy pursuant to the eighth amendment for sentences already imposed that violated *Miller*. Nothing in *Riley* or *Casiano* remotely suggests, however, that in light of the subsequent passage of § 54-125a (f) and the United States Supreme Court's decision in *Montgomery*, parole eligibility is not a constitutionally adequate remedy for Connecticut juvenile offenders whose sentences may have violated *Miller*. It is noteworthy that our Supreme Court declined to extend *Miller* to apply to sentences of less than fifty years and stated that it had "every reason to expect that [its] decisions in *Riley* and [*Casiano*] will prompt our legislature to renew earlier efforts to address the implications of the Supreme Court's decisions in *Graham and Miller*."[13] (Emphasis added.) *Casiano* v. *Commissioner of Correction*, supra, 317 Conn. 79. Our legislature has now

implemented such a remedy. Our conclusion that parole eligibility provides a constitutionally adequate remedy under the eighth amendment to sentences that may have violated *Miller* does not disturb or contradict the holdings in *Riley* or *Casiano*.[14] *Riley* and *Casiano* make clear that juvenile offenders whose sentences violated *Miller* are entitled to an individualized consideration of the mitigating factors of youth and their effect on a juvenile's criminal behavior. The United States Supreme Court in *Montgomery* clarified that this individualized consideration can occur at a parole hearing, and § 54-125a (f) clearly provides this opportunity.[15] The United States Supreme Court is the ultimate authority on the requirements of the federal constitution, and has emphasized that parole eligibility is a constitutionally adequate remedy for sentences that violate *Miller* in light of that case's retroactive application.[16]

## IV

### STATE CONSTITUTIONAL CLAIM

The defendant also contends that this court should hold that, even if parole eligibility is adequate under the federal constitution, it does not provide an adequate remedy under the state constitution. The defendant argues that, under the Connecticut constitution, the only remedy for sentences imposed in violation of *Miller* is resentencing.

The following legal principles are relevant to this claim. "It is well established that federal constitutional law establishes a minimum national standard for the exercise of individual rights and does not inhibit state governments from affording higher levels of protection for such rights." (Internal quotation marks omitted.) *State* v. *Ross*, 230 Conn. 183, 247, 646 A.2d 1318 (1994), cert. denied, 513 U.S. 1165, 115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995). In several cases, our Supreme Court has concluded that "the state constitution provides broader protection of individual rights than does the federal constitution." (Internal quotation marks omitted.) Id., 248. "It is by now well established that the constitution of Connecticut prohibits cruel and unusual punishments under the auspices of the dual due process provisions contained in article first, §§ 8 and 9. Those due process protections take as their hallmark principles of fundamental fairness rooted in our state's unique common law, statutory, and constitutional traditions. . . . Although neither provision of the state constitution expressly references cruel or unusual punishments, it is settled constitutional doctrine that both of our due process clauses prohibit governmental infliction of cruel and unusual punishments." (Citations omitted; footnote omitted.) *State* v. *Santiago*, 318 Conn. 1, 17–18, 112 A.3d 1 (2015). We must determine whether, under these sections of the state constitution, parole eligibility under § 54-125a (f) is a constitutionally adequate remedy for sentences that were imposed in violation of

*Miller*. We conclude that it is.

"In order to construe the contours of the state constitution and reach reasoned and principled results, the following tools of analysis should be considered to the extent applicable: (1) the textual approach . . . (2) holdings and dicta of [our Supreme Court], and the Appellate Court . . . (3) federal precedent . . . (4) sister state decisions or sibling approach . . . (5) the historical approach, including the historical constitutional setting and the debates of the framers . . . and (6) economic/sociological considerations." (Citations omitted; emphasis omitted.) *State* v. *Geisler*, 222 Conn. 672, 685, 610 A.2d 1225 (1992).

In regard to the first *Geisler* factor, the textual approach is neutral. Article first, §§ 8 and 9, of the Connecticut constitution do not contain any language specifically applying to juveniles.

As to the second *Geisler* factor, we have already addressed the relevant Connecticut precedents on juvenile sentencing, namely, *Riley*, *Casiano*, *Taylor G.*, and *Logan*. See part I of this opinion. As noted, *Riley* and *Casiano* expanded the holdings of *Graham* and *Miller* under Connecticut law to apply to discretionary life sentences and de facto life sentences. That our Supreme Court has expanded upon *Miller* in previous cases does not provide, in and of itself, a principled reason for us to further expand the requirements of that case under the state constitution in the present case.[17] Our Supreme Court has had no occasion to consider the remedy of parole eligibility because § 54-125a (f) had not yet been enacted. As we have noted, we consider it significant that our Supreme Court in *Casiano* stated that it expected our legislature to enact an appropriate remedy to respond to the requirements of *Graham, Miller, Riley*, and *Casiano*. The legislature has since implemented a remedy. Thus, we believe that our Supreme Court's precedent weighs against expanding the state constitution to require resentencing. Requiring resentencing under the state constitution, even though parole eligibility is adequate under the federal constitution, would seem to undermine the very legislative response that our Supreme Court contemplated in *Casiano*.

We next address the third *Geisler* factor, federal precedent. The defendant asserts that federal precedent supports his claim and cites to *United States* v. *Pete*, 819 F.3d 1121, 1126, 1133–34 (9th Cir. 2016), in which the United States Court of Appeals for the Ninth Circuit, after *Montgomery*, remanded the case to the District Court for a second resentencing because the District Court had abused its discretion in declining to appoint an expert to aid the defendant in presenting mitigating evidence at his first resentencing after *Miller*. The defendant was serving a mandatory life without parole sentence pursuant to federal statute for a murder he committed in 2002 at the age of sixteen. Id., 1124, 1126.

The Ninth Circuit concluded that the refusal to appoint an expert was an abuse of discretion, vacated the sentence, and remanded the case for resentencing. Id., 1133–34. There is no reference in *Pete* to the remedy of parole eligibility because "[t]he Sentencing Reform Act of 1984 abolished all forms of federal parole for offenses committed after November 1, 1987." *Rich* v. *Maranville*, 369 F.3d 83, 85 n.1 (2d. Cir.) cert. denied sub nom. *Rich* v. *Hatin*, 543 U.S. 913, 125 S. Ct. 233, 160 L. Ed. 2d 193 (2004). *Pete* therefore is not persuasive authority upon which this court, in light of the defendant's parole eligibility, should expand *Miller* and *Graham* under the constitution of Connecticut to require resentencing for juvenile offenders in the defendant's circumstances.[18]

In regard to decisions from sister states, the trend, though not definitive, appears to be that in states that have enacted a statute providing parole eligibility for juveniles whose life without parole and functional equivalent sentences were imposed without consideration of *Miller*, courts have concluded that parole eligibility is constitutionally adequate to remedy a *Miller* violation.

For example, the California Supreme Court recently held, in a direct appeal, that the claims of juvenile offenders whose mandatory de facto life sentences violate *Miller* are moot because those juvenile offenders are now parole eligible under a recently enacted statute. *People* v. *Franklin*, 63 Cal. 4th 261, 370 P.3d 1053, 202 Cal. Rptr. 3d 496 (2016). In *Franklin*, the defendant was convicted of murder as a juvenile and was serving a mandatory fifty year to life sentence. Id., 268. After the defendant was sentenced but before the *Montgomery* decision, the California legislature enacted a statute conferring parole on juvenile offenders and explicitly recognized that the purpose of the legislation was "to bring juvenile sentencing into conformity with *Graham* [and] *Miller* . . . ." Id., 277. Under this statute, the defendant in *Franklin* is entitled to a parole hearing after serving twenty-five years in prison. Id. The court stated that "[the defendant] is now serving a life sentence that includes a meaningful opportunity for release during his 25th year of incarceration. Such a sentence is neither [life without parole] nor its functional equivalent. *Because [the defendant] is not serving [a life without parole] sentence or its functional equivalent, no Miller claim arises here. The Legislature's enactment of [the statute] has rendered moot [the defendant's] challenge to his original sentence under Miller.*"[19] (Emphasis added.) Id., 279–80. The remedy under § 54-125a (f) is similar to the remedy provided by the California statute.[20] We find the California Supreme Court's analysis persuasive in our consideration of the present case.[21] The defendant in the present case will be eligible for parole at approximately the age of thirty-nine. After the enactment of § 54-125a (f), the defendant is not

serving a life without parole sentence or its functional equivalent.

The defendant in his supplemental brief to this court asserts that sister state precedent supports his position that parole eligibility is constitutionally inadequate as a remedy for a *Miller* violation. He cites to *State* v. *Zarate*, Indictment No. 09-02-0062, 2016 WL 1079462, *1 (N.J. App. Div. March 21, 2016), in which the juvenile offender was sentenced in 2009 to a "life sentence carrying a mandatory parole ineligibility period of 63.75 years" pursuant to New Jersey's "No Early Release Act . . . ." The defendant in that case would not be eligible for parole until 2069, at which time he would be seventy-eight years and eight months old. *State* v. *Zarate*, supra, 2016 WL 1079462, *2. The court determined that a mandatory parole ineligibility period of 63.75 years is a de facto life sentence and remanded the case to the trial court to reconsider the defendant's sentence. *State* v. *Zarate*, supra, 2016 WL 1079462, *15.

*Zarate* is not persuasive authority that parole eligibility, as constituted under § 54-125a (f), is not a constitutionally adequate remedy and that resentencing of the defendant in the present case is required. First, the parole ineligibility period of 63.75 years exceeds what our legislature in General Statutes § 53a-35b has defined as a life sentence (sixty years), and what our Supreme Court concluded in *Casiano* was a de facto life sentence for juvenile offenders (fifty years). Section 54-125a (f) provides a maximum parole ineligibility period of thirty years for a juvenile offender. Thus, assuming a juvenile offender was sentenced just before the age of eighteen to a term of years sentence exceeding fifty years, that juvenile offender would be parole eligible, at the latest, when he or she is approximately forty-eight years of age. This is far different from *Zarate*, in which the defendant was sentenced pursuant to a pre-*Miller* state statute under which he would not be parole eligible until he was the age of approximately seventy-nine. Cf. *State* v. *Tyson*, Indictment No. 85-06-2616, 2016 WL 483527, *2 (N.J. App. Div. February 9, 2016) (sentence of life with parole eligibility after thirty years on juvenile offender does not violate eighth amendment). Section 54-125a (f) was enacted in direct response to the requirements of *Graham, Miller, Riley*, and *Casiano*, and requires that a juvenile offender serve, at most, thirty years without parole eligibility.

The defendant is correct that, after *Montgomery*, some courts have remanded cases for resentencing.[22] This is especially true in jurisdictions that do not have parole or have limited parole eligibility for juvenile offenders sentenced prior to *Miller*. See *Atwell* v. *State*, Docket No. SC14-193, 2016 WL 3010795, *2–3 (Fla. May 26, 2016) (remanding for resentencing because juvenile defendant would not be parole eligible pursuant to pre-*Miller* statute until 2130 and "[r]ather than offer[ing]

parole as a means of complying with the principles . . . [in *Miller* and *Graham*], the Florida Legislature chose instead to enact a wholly new and distinct sentencing framework for juvenile offenders, offering term-of-years sentencing options for trial courts and *providing for subsequent judicial review* of lengthy sentences" [emphasis added]).[23] We are unpersuaded, however, that such cases support the proposition that remanding for resentencing is *constitutionally required* even after a state legislature has enacted a statute specifically to offer parole eligibility to defendants whose sentences now would be held to violate *Miller*.

The fifth *Geisler* factor, the historical approach, in theory, arguably weighs against the defendant. The state, quoting *State* v. *Jose C.*, Superior Court, judicial district of New Haven, Docket No. CR-6421185 (March 21, 1996) (16 Conn. L. Rptr. 419, 425), aff'd sub nom. *State* v. *Angel C.*, 245 Conn. 93, 715 A.2d 652 (1998), points out that "[a]t the time of the adoption of its 1818 constitution, Connecticut followed the common law and treated fourteen and fifteen year olds as adults when charged with a felony offense. It was not until 1921 that Connecticut established by statute a juvenile justice system." (Internal quotation marks omitted.) This historical consideration, however, offers no insight into the specific question of whether the state constitution mandates the resentencing of juvenile offenders whose sentences violate *Miller* upon retroactive application.

The sixth *Geisler* factor involves consideration of the contemporary understandings of applicable economic and sociological norms. In regard to sociological considerations, the laws of Connecticut have changed in several areas throughout our state's history to provide special protections to juveniles. Section 54-125a (f) specifically confers special protection on juveniles, as it applies only to those who were under the age of eighteen at the time they committed their offenses. This factor does not support the defendant's assertion that the remedy the statute provides is not constitutionally adequate; it was specifically enacted by the legislature to respond to *Miller* and *Graham* by providing increased parole eligibility to juvenile offenders.

Because of the unique circumstances of this case, we also note the practical challenges that would be inherent in requiring resentencing in these circumstances. Section 54-91g provides an extensive list of factors that sentencing courts must consider post-*Miller* when a juvenile offender is convicted of a class A or B felony. This section mandates consideration of "the defendant's age at the time of the offense, the hallmark features of adolescence, and any scientific and psychological evidence showing the differences between a child's brain development and an adult's brain development . . . ." General Statutes § 54-91g

(a) (1). Furthermore, the statute ensures that the sentencing court will have this information before it prior to sentencing, as the statute prohibits the waiver of any presentence investigation or report. General Statutes § 54-91g (b).

In the present case, as a practical matter, it would be exceedingly difficult for a sentencing court to retroactively make the determinations required by § 54-91g. The defendant waived the presentence investigation and there was no consideration of the *Miller* factors, as *Miller* would not be decided for another twelve years. In light of our legislature enacting § 54-125a (f), we have significant concerns as to whether trial courts are the proper forum in which to provide the defendant and others in his position with a "meaningful opportunity to obtain release . . . ." *State* v. *Riley*, supra, 315 Conn. 661. Although courts in some instances can consider postsentencing conduct during resentencing; *Pepper* v. *United States*, 562 U.S. 476, 491–92, 131 S. Ct. 1229, 179 L. Ed. 2d 196 (2011); "[u]nder *Miller* . . . the inquiry is whether the inmate was seen to be incorrigible when he was sentenced—not whether he has proven corrigible and so can safely be paroled today." *Montgomery* v. *Louisiana*, supra, 136 S. Ct. 744 (Scalia, J., dissenting). For example, in the present case, a resentencing court would be called on to determine, without the benefit of a presentence investigation conducted at the time of the defendant's conviction, what the defendant's character was sixteen years ago when he was sentenced. Without such information, the court would likely need to principally rely upon the defendant's subsequent rehabilitation or lack thereof since his sentencing. This situation would arise in other cases where juvenile offenders were sentenced several years or decades prior to *Miller*. Resentencing in such cases would be cumbersome and would in reality be more akin to a parole hearing.[24] We note that the trial court recognized at oral argument on the defendant's motion that the defendant had presented documentation demonstrating his efforts at rehabilitation. Whether the defendant has sufficiently rehabilitated himself to safely rejoin society, however, is precisely the determination that the parole board is statutorily designated to make. Moreover, a new sentencing proceeding would impose emotional burdens on victims, who may have struggled to cope with tragic losses caused by a defendant's crimes.

As the United States Supreme Court emphasized in *Montgomery*, the key focus in remedying retrospective *Miller* violations is providing juvenile offenders a meaningful opportunity for release in which they will be able to demonstrate the mitigating factors of youth and their greater ability for rehabilitation. See id., 736 (majority). In this state, juvenile offenders sentenced to greater than ten years incarceration will have a meaningful opportunity for release in a parole hearing during which

the parole board will be able to consider the mitigating factors of youth. Our state legislature has enacted, in careful consideration of the evolving legal landscape, a constitutionally adequate remedy for sentences that were imposed in violation of *Miller*.[25] We conclude that, for those juvenile defendants whose sentences violated *Miller* and who are, or will be, eligible for parole under § 54-125a (f), resentencing is not required under our state constitution.

The form of the judgment is improper, the judgment is reversed and the case is remanded with direction to render judgment denying the defendant's motion to correct an illegal sentence.

In this opinion the other judges concurred.

[1] The state subsequently dropped the charge of conspiracy to commit murder.

[2] We address *Riley*, *Casiano*, and the changes in the law regarding juvenile sentencing more fully in part I of this opinion. The parties filed supplemental briefs addressing the effect of the recent changes in the law on the outcome of this case.

[3] When we refer to a *Miller* claim, we mean the requirement that a sentencing court consider the defendant's "chronological age and its hallmark features" as a mitigating factor prior to sentencing a juvenile offender to life without parole or its functional equivalent. *State* v. *Riley*, supra, 315 Conn. 651–52. When we refer to a *Graham* claim we mean a claim that a juvenile offender serving a life sentence or its functional equivalent is entitled to "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Graham* v. *Florida*, supra, 560 U.S. 75.

[4] Our Supreme Court stated that "*Mill*er logically indicates that, if a sentencing scheme permits the imposition of a punishment on a juvenile homicide offender, the trial court *must* consider the offender's 'chronological age and its hallmark features' as mitigating against such a severe sentence. *Miller* v. *Alabama*, supra, 132 S. Ct. 2468. As the court in *Miller* explained, those features include: 'immaturity, impetuosity, and failure to appreciate risks and consequences'; the offender's 'family and home environment' and the offender's inability to extricate himself from that environment; 'the circumstances of the homicide offense, including the extent of [the offender's] participation in the conduct and the way familial and peer pressures may have affected him'; the offender's 'inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys'; and the 'possibility of rehabilitation . . . .' " (Emphasis in original.) *State* v. *Riley*, supra, 315 Conn. 658.

[5] Section 1 of Public Act 15-84, codified in part at § 54-125a (f), provides in relevant part: "(f) (1) Notwithstanding the provisions of subsections (a) to (e), inclusive, of this section, a person convicted of one or more crimes committed while such person was under eighteen years of age, who is incarcerated on or after October 1, 2015, and who received a definite sentence or total effective sentence of more than ten years for such crime or crimes prior to, on or after October 1, 2015, may be allowed to go at large on parole in the discretion of the panel of the Board of Pardons and Paroles for the institution in which such person is confined, provided (A) if such person is serving a sentence of fifty years or less, such person shall be eligible for parole after serving sixty per cent of the sentence or twelve years, whichever is greater, or (B) if such person is serving a sentence of more than fifty years, such person shall be eligible for parole after serving thirty years. Nothing in this subsection shall limit a person's eligibility for parole release under the provisions of subsections (a) to (e), inclusive, of this section if such person would be eligible for parole release at an earlier date under any of such provisions.

(2) The board shall apply the parole eligibility rules of this subsection only with respect to the sentence for a crime or crimes committed while a person was under eighteen years of age. . . .

(3) Whenever a person becomes eligible for parole release pursuant to this subsection, the board shall hold a hearing to determine such person's suitability for parole release. At least twelve months prior to such hearing, the board shall notify the office of Chief Public Defender, the appropriate state's attorney, the Victim Services Unit within the Department of Correc-

tion, the Office of the Victim Advocate and the Office of Victim Services within the Judicial Department of such person's eligibility for parole release pursuant to this subsection. The office of Chief Public Defender shall assign counsel for such person pursuant to section 51-296 if such person is indigent. At any hearing to determine such person's suitability for parole release pursuant to this subsection, the board shall permit (A) such person to make a statement on such person's behalf, (B) counsel for such person and the state's attorney to submit reports and other documents, and (C) any victim of the crime or crimes to make a statement pursuant to section 54-126a. The board may request testimony from mental health professionals or other relevant witnesses, and reports from the Commissioner of Correction or other persons, as the board may require. The board shall use validated risk assessment and needs assessment tools and its risk-based structured decision making and release criteria established pursuant to subsection (d) of section 54-124a in making a determination pursuant to this subsection.

(4) After such hearing, the board may allow such person to go at large on parole with respect to any portion of a sentence that was based on a crime or crimes committed while such person was under eighteen years of age if the board finds that such parole release would be consistent with the factors set forth in subdivisions (1) to (4), inclusive, of subsection (c) of section 54-300 and if it appears, from all available information, including, but not limited to, any reports from the Commissioner of Correction, that (A) there is a reasonable probability that such person will live and remain at liberty without violating the law, (B) the benefits to such person and society that would result from such person's release to community supervision substantially outweigh the benefits to such person and society that would result from such person's continued incarceration, and (C) *such person has demonstrated substantial rehabilitation since the date such crime or crimes were committed considering such person's character, background and history, as demonstrated by factors, including, but not limited to, such person's correctional record, the age and circumstances of such person as of the date of the commission of the crime or crimes, whether such person has demonstrated remorse and increased maturity since the date of the commission of the crime or crimes, such person's contributions to the welfare of other persons through service, such person's efforts to overcome substance abuse, addiction, trauma, lack of education or obstacles that such person may have faced as a child or youth in the adult correctional system, the opportunities for rehabilitation in the adult correctional system and the overall degree of such person's rehabilitation considering the nature and circumstances of the crime or crimes.*

(5) After such hearing, the board shall articulate for the record its decision and the reasons for its decision. If the board determines that continued confinement is necessary, the board may reassess such person's suitability for a new parole hearing at a later date to be determined at the discretion of the board, but not earlier than two years after the date of its decision.

(6) The decision of the board under this subsection shall not be subject to appeal." (Emphasis added.)

[6] Section 2 of Public Act 15-84, codified at § 54-91g, provides: "(a) If the case of a child, as defined in section 46b-120 of the general statutes, is transferred to the regular criminal docket of the Superior Court pursuant to section 46b-127 of the general statutes, as amended by this act, and the child is convicted of a class A or B felony pursuant to such transfer, at the time of sentencing, the court shall:

(1) Consider, in addition to any other information relevant to sentencing, the defendant's age at the time of the offense, the hallmark features of adolescence, and any scientific and psychological evidence showing the differences between a child's brain development and an adult's brain development; and

(2) Consider, if the court proposes to sentence the child to a lengthy sentence under which it is likely that the child will die while incarcerated, how the scientific and psychological evidence described in subdivision (1) of this subsection counsels against such a sentence.

(b) Notwithstanding the provisions of section 54-91a of the general statutes, no presentence investigation or report may be waived with respect to a child convicted of a class A or B felony. Any presentence report prepared with respect to a child convicted of a class A or B felony shall address the factors set forth in subparagraphs (A) to (D), inclusive, of subdivision (1) of subsection (a) of this section.

(c) Whenever a child is sentenced pursuant to subsection (a) of this section, the court shall indicate the maximum period of incarceration that may apply to the child and whether the child may be eligible to apply for release on parole pursuant to subdivision (1) of subsection (f) of section 54-125a of the general statutes, as amended by this act.

(d) The Court Support Services Division of the Judicial Branch shall

compile reference materials relating to adolescent psychological and brain development to assist courts in sentencing children pursuant to this section."

[7] In the aftermath of *Miller*, state and federal courts have struggled with whether *Miller* applied retroactively upon collateral review, and divided several ways. Under federal law regarding the retroactivity of constitutional rules upon collateral review, a rule applies retroactively if it is a new substantive rule, or, if it is a new procedural rule, it is a "watershed rule of criminal procedure." *Casiano* v. *Commissioner of Correction*, supra, 317 Conn. 62. A mere new procedural rule does not apply retroactively. See id., 62–63. Some courts have concluded that *Miller* announced a substantive rule and thus applied retroactively; see., e.g., *Diatchenko* v. *District Attorney*, 466 Mass. 655, 666, 1 N.E.3d 270 (2013); our Supreme Court determined that *Miller* announced a new watershed rule of criminal procedure, and thus applied retroactively; *Casiano* v. *Commissioner of Correction*, supra, 69; and other courts determined that *Miller* merely announced a procedural rule that did not apply retroactively; see, e.g., *In re Morgan*, 713 F.3d 1365, 1368 (11th Cir. 2013).

[8] In light of the legislature's enactment of Public Act 15-84 and the United States Supreme Court's decision in *Montgomery*, the defendant amended his appeal by withdrawing his *Graham* claim.

[9] In fact, the defendant states in his appellate brief that the court "impliedly" denied his motion to correct an illegal sentence.

[10] The defendant suggests that *Miller* is automatically implicated because he was *exposed* to a sentence of life without parole and the court did not consider the *Miller* factors prior to sentencing him. See footnote 4 of this opinion. Going forward, courts certainly must comply with *Miller* through consideration of the requirements listed in § 54-91g in sentencing juveniles convicted of class A and B felonies. "However, there is no authority, nor is there any principled analysis, that specifically supports the defendant's theory that the defendant's sentence should be examined in light of hypothetical sentences that could have been imposed but which were not imposed." *State* v. *Holley*, Superior Court, judicial district of Middlesex, Docket No. CR-08-185982 (May 18, 2016). The defendant received a sentence of thirty-five years; the fact that he *could have* received a life sentence but did not has no bearing on our analysis of whether the sentence actually imposed violates *Miller* retrospectively.

[11] The defendant claims that *Casiano*, which held that a sentence of fifty years without parole violates the constitutional principles outlined in *Miller*, supports his contention that his sentence of thirty-five years without parole violated *Miller*. In *Casiano*, our Supreme Court stated that it "*need not decide . . . whether the imposition of a term of less than fifty years imprisonment without parole on a juvenile offender would require the procedures set forth in Miller . . . .* Indeed, we have every reason to expect that our decisions in *Riley* and in the present case will prompt our legislature to renew earlier efforts to address the implications of the Supreme Court's decisions in *Graham and Miller*." (Emphasis added.) *Casiano* v. *Commissioner of Correction*, supra, 317 Conn. 79. This court has held that a sentence of thirty-one years is not the functional equivalent of life without parole and, thus, does not implicate *Miller. State* v. *Logan*, supra, 160 Conn. App. 293–94; see also *State* v. *Taylor G.*, 315 Conn. 734, 744, 110 A.3d 388 (2015) (concluding that mandatory sentences of five and ten years do not violate the eighth amendment pursuant to *Miller*).

The defendant contends that because, if he serves his full sentence, he will not be released until he is fifty-two years old, "[a]s identified in *Casiano* [v. *Commissioner of Correction*, supra, 317 Conn. 77] the defendant's prospect of 'establishing a career, marrying, raising a family, or voting,' will have diminished greatly by that age." He cites to several statistics demonstrating the decreased prospects of employment for people between the ages of fifty and sixty-five, as well as statistics regarding the decreased fertility of men over the age of forty. "Although the deprivation of liberty for any amount of time, including a single year, is not insignificant, *Roper, Graham* and *Miller* cannot be read to mean that all mandatory deprivations of liberty are of potentially constitutional magnitude." *State* v. *Taylor G.*, supra, 315 Conn. 745. We are cognizant that those being released from extended periods of incarceration will likely face greater obstacles in establishing a career, marrying, raising a family, or voting than those who have not been incarcerated. We see no legally meaningful distinction, however, between the sentence of thirty-one years without parole in *Logan*, which this court concluded did not violate *Miller*, and the defendant's sentence of thirty-five years without parole.

We note that the Iowa Supreme Court has concluded that a sentence with a thirty-five year parole ineligibility period imposed on a juvenile violates *Miller. State* v. *Pearson*, 836 N.W.2d 88, 96 (Iowa 2013). Although *Pearson*

involved a nonhomicide conviction, we note that our Supreme Court has favorably cited the Iowa Supreme Court's juvenile sentencing jurisprudence. *Casiano* v. *Commissioner of Correction*, supra, 317 Conn. 79 (citing *State* v. *Null*, 836 N.W.2d 41 [Iowa 2013]). Only for purposes of our analysis of whether parole eligibility under § 54-125a (f) provides a constitutionally adequate remedy, we will assume, without deciding, that the defendant's sentence of thirty-five years without parole violated the eighth amendment pursuant to *Miller*.

[12] We note that, notwithstanding the defendant's claim that parole eligibility is not an adequate remedy, one of the remedies he sought in filing his motion to correct was parole eligibility. In his amended motion to correct the defendant requested that "the court order the Board of Pardon and Paroles to immediately evaluate the defendant for release or, in the alternative, that the court vacate the sentence and conviction and remand the case to the juvenile court and for such further relief to which the defendant may be entitled."

[13] We note that while this appeal has been pending, the judges of our Superior Court have expressed differing views about the appropriate remedy after *Montgomery*. In *State* v. *Belcher*, Superior Court, judicial district of Fairfield, Docket No. CR-94-100508 (April 29, 2016), the court, noting that our Supreme Court remanded the case in *Riley* for resentencing, concluded that it was compelled to order the same result. The defendant argues that this court is required to reach a similar conclusion. Other Superior Court decisions, however, have concluded that parole eligibility provides a sufficient remedy and concluded that the defendants in each case were not entitled to resentencing. See *State* v. *Ellis*, Superior Court, judicial district of Waterbury, Docket No. CR-91-196561 (June 3, 2016); *State* v. *Holley*, Superior Court, judicial district of Middlesex, Docket No. CR-08-185982 (May 18, 2016); *State* v. *Guess*, Superior Court, judicial district of New Haven, CR-93-0385472 (May 5, 2016). We find the analysis in *Ellis* especially persuasive in its rejection of the defendant's argument. In *Ellis*, the court concluded that a defendant's fifty-five year sentence did not violate *Miller* because he is now parole eligible pursuant to § 54-125a (f). The court disagreed with the reasoning in *Belcher* that, because our Supreme Court in *Riley* remanded the case for resentencing, resentencing is now required in all cases that arguably implicate *Miller*. It noted that the "*Riley* decision, which was prior to both Public Act 15-84 and the *Montgomery* decision, was predicated on the facts of [that] case; a virtual life sentence imposed on a juvenile with no possibility of parole.

"Currently, as a direct result of Public Act 15-84, no Connecticut sentence imposed on a living juvenile offender, in the past, present or future, constitutes a life sentence, virtual or otherwise, without the possibility of parole. The predicate for the *Riley* decision no longer exists.

"Furthermore, the court in *Riley* never suggested that its decision constituted a unique approach to the application of *Miller* creating an additional right for Connecticut citizens that could not be affected by future legislation or future United States Supreme Court decisions. The court simply applied *Miller* to a unique set of circumstances (a discretionary sentencing scheme, and virtual life sentence) that existed at the time of the decision." *State* v. *Ellis*, supra, Superior Court, Docket No. CR-91-196561.

[14] The defendant notes that the United States Supreme Court denied the petitions for writs of certiorari in *Riley* and *Casiano*. It is clear that those cases continue to be binding precedent on Connecticut courts. We do not see how the denial of the petitions in those cases, which had nothing to do with whether parole eligibility is an adequate remedy for a *Miller* violation, prevents this court from following *Montgomery*.

[15] The defendant makes an analogous argument that our legislature conceptualized *Miller* and *Graham* as separate claims in enacting Public Act 15-84. We do not see how, even if the defendant is correct that the legislature, pre-*Montgomery*, conceptualized *Miller* and *Graham* separately in enacting the two portions of Public Act 15-84, such consideration is relevant to our analysis of whether parole eligibility is a constitutionally adequate remedy under the eighth amendment *after* the decision in *Montgomery*.

[16] We are unpersuaded by the defendant's additional argument that § 54-125a (f) is not adequate in comparison to the Wyoming parole statute that the United States Supreme Court approvingly cited in *Montgomery*. Section 54-125a (f) provides more expansive parole eligibility than the Wyoming statute. Thus, it would be incongruous for us to conclude that our state statute is not a constitutionally adequate remedy under the eighth amendment.

[17] Connecticut is one of several states that have concluded that *Graham*

and *Miller* apply to lengthy term of years sentences. See, e.g., *State* v. *Null*, 836 N.W.2d 41, 72 (Iowa 2013). Other states, however, have adhered to the principle that "[s]trictly read, *Miller* forbids only the imposition of a mandatory sentence of life imprisonment without parole on a person under age 18 who has committed a homicide." *State* v. *Cardeilhac*, 293 Neb. 200, 218, 876 N.W.2d 876 (2014); see also *State* v. *Houston*, 353 P.3d 55, 77 (Utah 2015) (*Miller* does not apply to discretionary life sentences); *Vasquez* v. *Commonwealth*, 291 Va. 232, 246, 781 S.E.2d 920 (2016) (aggregate term of years sentence for nonhomicide offense that set parole eligibility beyond defendant's life expectancy did not violate *Graham*). We note that, in considering whether to further extend *Miller*, our Supreme Court has already expanded its requirements under state law beyond the original holding by applying it to discretionary life without parole sentences and term of years sentences that are the functional equivalent to life without parole.

[18] The defendant also cites to *United States* v. *Under Seal*, 819 F.3d 715 (4th Cir. 2016), in which the Court of Appeals for the Fourth Circuit stated: "The limits of *Montgomery* will no doubt be litigated in future cases, but for present purposes it is sufficient to observe that the Supreme Court has indicated that vacating a conviction may not be necessary in order to remedy a past *Miller* violation." Id., 728. That case did not involve the question of whether parole eligibility is a sufficient remedy for past *Miller* violations. It involved whether a juvenile offender could be prosecuted as an adult in federal district court where, if convicted, a federal statute mandated that the court impose either the death penalty or life without parole, both of which if imposed on a juvenile would violate the eighth amendment. Id. The Fourth Circuit affirmed the judgment that the prosecution could not proceed. Id. This case does not support the defendant's argument that federal precedent suggests that parole eligibility is not a constitutionally adequate remedy for a *Miller* violation, as the court did not consider that issue.

[19] Other state courts have reached a similar conclusion. The Arizona Court of Appeals recently denied a juvenile offender's request for resentencing pursuant to *Miller* because the juvenile offender is now parole eligible pursuant to state statute. *State* v. *Mendez*, Docket No. 2CA-CR 2016-0091-PR, 2016 WL 2855660, *1 (Ariz. App. May 16, 2016). In fact, the Arizona Court of Appeals had made such holding prior to *Montgomery*. See *State* v. *Vera*, 235 Ariz. 571, 578, 334 P.3d 754 (App. 2014), cert. denied,      U.S.     , 136 S. Ct. 121, 193 L. Ed. 2d 95 (2015). The Nebraska Supreme Court; *State* v. *Cardeilhac*, 293 Neb. 200, 218, 876 N.W.2d 876 (2016) (citing *Montgomery* and holding that minimum 60 year to life sentence imposed on juvenile offender did not violate *Miller* because defendant would be parole eligible pursuant to state statute after serving half of minimum term); and the Ohio Court of Appeals; *State* v. *Terrell*, Docket No. CR-13-581323-A, 2016 WL 3442917, *5 (Ohio App. 2016) (declining to apply *Miller* to sentences that offer defendants parole eligibility); have also reached similar conclusions. See also *State* v. *Tran*, Docket No. CAAP-13-0005233, 2016 WL 3768880, *6–7 (Haw. App. 2016) (concluding that life sentence with possibility of parole imposed on juvenile offender does not violate *Miller*).

[20] We recognize some distinctions between *Franklin* and the present case, but they do not affect our conclusion that parole eligibility is a constitutionally adequate remedy. For example, in *Franklin*, the court remanded the case to the trial court for the limited purpose of "determining whether [the defendant] was afforded an adequate opportunity to make a record of information that will be relevant" to the parole board. *People* v. *Franklin*, supra, 63 Cal. 4th 286–87. Section 54-125a (f) (3) allows juvenile offenders to present evidence and gives the Board of Pardons and Paroles the authority to request testimony from mental health professionals and other witnesses.

The decision in *Franklin* also noted that its mootness holding was limited to circumstances where the state statute conferred parole eligibility to a juvenile offender sentenced to a lengthy mandatory sentence. Id., 280. As we have stated, § 54-125a (f) applies to both mandatory and discretionary sentences imposed on a juvenile offender.

[21] We also find Massachusetts case law persuasive. The Massachusetts Supreme Judicial Court, two years *before Montgomery*, held that parole eligibility is an adequate remedy for a retroactive *Miller* violation. *Diatchenko* v. *District Attorney*, 466 Mass. 655, 673, 1 N.E.3d 270 (2013). The court concluded that the defendant's life sentence violated *Miller*. Id., 667. Rather than requiring resentencing upon retroactive application, however, the court excised the portions of the applicable statute precluding homicide offenders from being parole eligible if the offenders were juveniles at the time they committed the crime. Id., 674. The result in Massachusetts was

that, under the statute, juvenile offenders sentenced to life without parole would become eligible for parole after fifteen years of imprisonment. See *Commonwealth* v. *Costa*, 472 Mass. 139, 140, 33 N.E.3d 412 (2015).

The defendant cited to *Costa* in a letter submitted to this court prior to oral argument in support of his contention that parole eligibility is constitutionally insufficient. In *Costa*, the Massachusetts Supreme Judicial Court ordered resentencing of a juvenile offender, notwithstanding its decision in *Diatchenko*, because the defendant had been sentenced to two consecutive discretionary life sentences, and, thus, would not be parole eligible under Massachusetts law for thirty years. Id., 140, 144. The court remanded the case for resentencing, reasoning that because the defendant was sentenced prior to *Miller* and *Diatchenko*, the trial court did not have the opportunity to consider the effect imposing consecutive life sentences would have on the defendant's parole eligibility. Id., 144. This is not applicable to the situation in the present case. We have not been made aware of any such case in Connecticut where a juvenile offender, who otherwise would have been eligible for parole under § 54-125a (f), is not eligible for parole within the timeframe of the statute because he or she is serving consecutive sentences. If such case exists, we express no opinion on the constitutionality of such sentence. Our holding today that § 54-125a (f) provides a constitutionally adequate remedy is limited to juvenile offenders who are or will be eligible for parole within the applicable timeframes set forth in the statute.

[22] The defendant also cited to *People* v. *Nieto*, 52 N.E.3d 442, 545 (Ill. App. 2016), in which the Appellate Court of Illinois remanded a case for resentencing after *Montgomery*. *Nieto* is distinguishable. The *Nieto* defendant was sentenced to seventy-eight years and would have had to serve at least 75.3 years after receiving sentencing credit. Id., 447. He would not have been released until the age of ninety-four. Id., 448.

[23] We note the recent decision of the Louisiana Supreme Court, which upon remand from the United States Supreme Court ordered that the defendant in *Montgomery* v. *Louisiana*, supra, 136 S. Ct. 718, be resentenced. *State* v. *Montgomery*, Docket No. 13-KP-1163, 2016 WL 3533068, *3 (La. June 28, 2016). The court concluded that it was compelled to order resentencing because the Louisiana legislature had failed to enact a proposed law that would have conferred parole eligibility on those whose sentences violated *Miller* upon retroactive application. *State* v. *Montgomery*, supra, 2016 WL3533068, *2.

The Iowa Supreme Court also recently remanded a case for resentencing after the defendant had been sentenced to a discretionary sentence of life without parole. *State* v. *Sweet*, 879 N.W.2d 811, 812 (Iowa 2016). The court held that sentencing a juvenile to a discretionary sentence of life without parole violates the state constitution. Id., 839. It stated that "sentencing courts should not be required to make speculative up-front decisions on juvenile offenders' prospects for rehabilitation because they lack adequate predictive information supporting such a decision. The parole board will be better able to discern whether the offender is irreparably corrupt after time has passed, after opportunities for maturation and rehabilitation have been provided, and after a record of success or failure in the rehabilitative process is available." Id. Thus, the court remanded the case for resentencing precisely because the defendant was not eligible for parole.

[24] Superior Court decisions have noted these same practical concerns. For example, as the court, *Fasano, J.*, aptly noted: "An actual resentencing would, presumably, require that the parties be limited to the facts and circumstances that existed at the time of the original sentencing, sometimes decades earlier, often in the absence of original judges and lawyers as well as other key participants in the original trial, many of whom have died or otherwise become unavailable. If the parameters of the resentencing extended to the offender's current maturity, rehabilitation, ability to function in society, etc; then, it would, actually, be a parole hearing without the benefit of a statutorily authorized, qualified, Board of [Pardon and] Parole. The resentencing or virtual parole hearing, would, then, be followed by another parole hearing pursuant to the new public act? It defies logic and legislative intent and subjects participants to the unnecessary, repeated ordeal of rehashing often horrific events and circumstances, unnecessarily." *State* v. *Ellis*, Superior Court, judicial district of Waterbury, Docket No. CR-91-196561 (June 3, 2016).

In another case involving four defendants' motions to correct illegal sentences, the court, *Clifford, J.*, likewise expressed practical, commonsense concerns: "Here's why the parole remedy suggested by the U.S. Supreme Court in *Montgomery* is appealing to this court. The four defendants, or petitioners, today, I was not the sentencing judge. One judge may be available as a judge trial referee, and Judge Fracasse, who was the trial judge in two of these, is deceased, and Judge William Hadden is retired from the

state bench.

"Two of these defendants, well, are now in their forties or close to forty, and two are in their thirties. These four cases highlight the problems in resentencing and why parole, as suggested by our U.S. Supreme Court, is a more practical solution than resentencing. If I order resentencing for these four defendants, I would be the sentencing judge on probably all four.

"Victims' families would have to be located and advised about a new sentencing procedure on cases where at least one conviction is over twenty-five years old. The victim's families will be informed that the hallmark characteristics of youth will be considered by a judge who previously had nothing to do with the case and for a defendant, in that particular case, who is now in his forties. . . .

"If I conduct resentencing what is relevant at resentencing? Is it only the characteristics of the defendant's youth according to *Miller*? Would I consider the defendant's immaturity, impetuosity, and failure to appreciate risks and consequences going back many, many years and that is all I would factor in? Would this court be able to consider negative or positive behavior by the defendant during incarceration since they received their sentence? Would I consider a defendant's maturity and rehabilitation at the time of resentencing just as parole would?

\* \* \*

"*Clearly, pursuant to Montgomery, parole is a viable, constitutional way to remedy a Miller violation and Montgomery concerned interpreting the case under Miller, it was not a Graham 'second look' case.*

"This court believes parole is a more realistic and practical solution than resentencing. I would have to find that the holdings in *Riley* and *Casiano* prevent this remedy; however, our [Supreme] Court never considered parole as a remedy since it didn't exist at the time of the decision." (Emphasis added.) *State* v. *Guess*, Superior Court, judicial district of New Haven, Docket No. CR-93-0385472 (May 5, 2016).

[25] The defendant, in a letter to this court prior to oral argument, and at oral argument, suggested that a conclusion by this court that parole eligibility is a sufficient remedy for a *Miller* violation would violate the separation of powers doctrine because juvenile offenders who are released on parole will still be subject to having to serve the full sentence if they violate their parole. Although we generally do not consider claims that have not been briefed; see *State* v. *Wright*, 197 Conn. 588, 595, 500 A.2d 547 (1985); we note that our Supreme Court in *Casiano* expected our legislature to implement future remedies to comply with *Riley, Graham and Miller*. Furthermore, *Montgomery* requires that those whose sentences violated *Miller* be given a meaningful opportunity for release; it does *not* require that all juvenile offenders be released with *no further supervision* by the criminal justice system. Whether juvenile offenders who are granted release pursuant to § 54-125a (f) return to prison or not is to be determined by *their* subsequent behavior.