******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MELVIN DELGADO
(SC 19663)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald,
Espinosa and Robinson, Js.

*Argued September 12—officially released December 27, 2016*

*Jennifer B. Smith*, for the appellant (defendant).

*Melissa Patterson*, assistant state's attorney, with
whom, on the brief, were *Gail P. Hardy*, state's attor-
ney, and *John F. Fahey* and *Michele C. Lukban*, senior
assistant state's attorneys, for the appellee (state).

*Opinion*

PALMER, J. Under recent changes to juvenile sentencing law, a court may not sentence a juvenile who has been convicted of murder to life imprisonment without parole unless the court considers mitigating factors associated with the juvenile's young age at the time of the crime. In the present appeal, we must determine how these changes in juvenile sentencing law impact individuals who were sentenced before the changes occurred. The defendant, Melvin Delgado, was sentenced to sixty-five years imprisonment without parole in 1996 for crimes that he committed when he was sixteen years old. Although he is now eligible for parole following the passage of No. 15-84 of the 2015 Public Acts (P.A. 15-84),[1] he filed a motion to correct his allegedly illegal sentence, claiming that he is entitled to be resentenced because the judge who sentenced him failed to consider youth related mitigating factors. The trial court rejected the defendant's claim and dismissed his motion to correct, and the defendant has appealed to this court. We affirm the trial court's dismissal of the motion to correct.

The following facts and procedural history are relevant to the present appeal. The defendant was convicted of accessory to murder in violation of General Statutes §§ 53a-54a and 53a-8, and commission of a class A, B or C felony with a firearm in violation of General Statutes § 53-202k. On December 16, 1996, the trial court, *Corrigan, J.*, rendered judgment sentencing the defendant to a total effective sentence of sixty-five years imprisonment without parole. On appeal, this court affirmed the judgment with respect to the murder conviction but vacated the judgment with respect to the weapons charge. *State* v. *Delgado*, 247 Conn. 616, 634, 725 A.2d 306 (1999). The facts underlying the defendant's conviction are set forth in that decision.[2]

In 2014, the defendant filed a motion to correct his sentence pursuant to Practice Book § 43-22,[3] contending that a prison term that is equivalent to life imprisonment without parole constitutes cruel and unusual punishment in violation of the eighth amendment to the United States constitution and article first, §§ 8 and 9, of the Connecticut constitution.[4] The defendant further argued that his sentence was illegal because he had not been given a meaningful opportunity for release from prison, and that the sentence had been imposed in an illegal manner because he was not afforded an individualized sentencing hearing at which the court could consider specific mitigating factors associated with his young age at the time of the crime of which he was convicted. The trial court, *Alexander, J.*, did not reach the merits of the motion to correct but dismissed the motion for lack of jurisdiction, from which dismissal the defendant now appeals.

# I

## PRINCIPLES OF JUVENILE SENTENCING LAW

Before turning to the defendant's claims, we consider recent changes to juvenile sentencing law that guide our analysis. As this court explained in *State* v. *Riley*, 315 Conn. 637, 110 A.3d 1205 (2015), cert. denied, U.S. , 136 S. Ct. 1361, 194 L. Ed. 2d 376 (2016), three United States Supreme Court cases have "fundamentally altered the legal landscape for the sentencing of juvenile offenders to comport with the ban on cruel and unusual punishment under the eighth amendment to the federal constitution. The court first barred capital punishment for all juvenile offenders; *Roper* v. *Simmons*, 543 U.S. 551, 575, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005); and then barred life imprisonment without the possibility of parole for juvenile nonhomicide offenders. *Graham* v. *Florida*, 560 U.S. 48, [82], 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). Most recently, in *Miller* v. *Alabama*, U.S. , 132 S. Ct. 2455, 2460, 183 L. Ed. 2d 407 (2012), the court held that mandatory sentencing schemes that impose a term of life imprisonment without parole on juvenile homicide offenders, thus precluding consideration of the offender's youth as mitigating against such a severe punishment, violate the principle of proportionate punishment under the eighth amendment." (Footnote omitted.) *State* v. *Riley*, supra, 640. The holding in *Miller* "flows from the basic precept of justice that punishment for crime should be graduated and proportioned to both the offender and the offense." (Internal quotation marks omitted.) *Miller* v. *Alabama*, supra, 2463.[5]

In *Riley*, this court characterized *Miller* as standing for two propositions: "(1) that a lesser sentence than life without parole must be available for a juvenile offender; and (2) that the sentencer must consider age related evidence as mitigation when deciding whether to irrevocably sentence juvenile offenders to a [term of life imprisonment, or its equivalent, without parole]." *State* v. *Riley*, supra, 315 Conn. 653. This court therefore concluded that "the dictates set forth in *Miller* may be violated even when the sentencing authority has discretion to impose a lesser sentence than life without parole if it fails to give due weight to evidence that *Miller* deemed constitutionally significant before determining that such a severe punishment is appropriate." Id. Because the record in *Riley* "[did] not clearly reflect that the court considered and gave mitigating weight to the defendant's youth and its hallmark features when considering whether to impose the functional equivalent to life imprisonment without parole," we concluded that the defendant in *Riley* was entitled to a new sentencing proceeding. Id., 660–61.

Several months after *Riley* was decided, this court concluded that the required sentencing considerations

identified in *Miller* applied retroactively in collateral proceedings. *Casiano* v. *Commissioner of Correction*, 317 Conn. 52, 62, 115 A.3d 1031 (2015), cert. denied sub nom. *Semple* v. *Casiano*, U.S. , 136 S. Ct. 1364, 194 L. Ed. 2d 376 (2016). During the same time frame, the Connecticut legislature enacted P.A. 15-84. Section 1 of P.A. 15-84, codified at General Statutes (Supp. 2016) § 54-125a, ensures that all juveniles who are sentenced to more than ten years imprisonment are eligible for parole. Section 2 of P.A. 15-84, codified as amended at General Statutes (Supp. 2016) § 54-91g, requires a sentencing judge to consider a juvenile's age and any youth related mitigating factors before imposing a sentence following a juvenile's conviction of any class A or class B felony.

Subsequently, the United States Supreme Court decided *Montgomery* v. *Louisiana*, U.S. , 136 S. Ct. 718, 736, 193 L. Ed. 2d 599 (2016), in which the court concluded that *Miller*, in prohibiting a mandatory life sentence without parole for juvenile offenders, had set forth a substantive rule of constitutional law that applied retroactively in cases on collateral review. In *Montgomery*, the petitioner, Henry Montgomery, was found " 'guilty without capital punishment' "; id., 725; in connection with a murder he had committed when he was seventeen years old, and which carried an automatic sentence of life without parole. Id., 725–26. The United States Supreme Court, after concluding that *Miller* announced a substantive rule of law, noted that "[g]iving *Miller* retroactive effect . . . does not require [s]tates to relitigate sentences, let alone convictions, in every case [in which] a juvenile offender received mandatory life without parole. A [s]tate may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them. . . . Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the [e]ighth [a]mendment. . . . Those prisoners who have shown an inability to reform will continue to serve life sentences. The opportunity for release will be afforded to those who demonstrate the truth of *Miller*'s central intuition—that children who commit even heinous crimes are capable of change." (Citation omitted.) Id., 736.

Most recently, the Appellate Court considered the impact of P.A. 15-84 and concluded that, "for juvenile offenders who were entitled to be, but were not, sentenced with consideration of the mitigating factors of youth as required by *Miller*, [an opportunity for parole under P.A. 15-84] offers a constitutionally adequate remedy under the eighth amendment to those who qualify for parole under its provisions." *State* v. *Williams-Bey*, 167 Conn. App. 744, 763, 144 A.3d 467 (2016). Accord-

ingly, the Appellate Court rejected the defendant's claim in *Williams-Bey* that he was entitled to resentencing. Id., 765–66.

## II

## JURISDICTION

With this background in mind, we consider the merits of the defendant's claim that the trial court improperly dismissed his motion to correct for lack of jurisdiction. "[A] generally accepted rule of the common law is that a sentence cannot be modified by the trial court . . . if the sentence was valid and execution of it has commenced." (Internal quotation marks omitted.) *State* v. *Parker*, 295 Conn. 825, 834, 992 A.2d 1103 (2010). If the trial court imposes an invalid sentence, however, it retains limited jurisdiction to correct the sentence. Id., 835. The procedures for correcting an invalid sentence are set forth in Practice Book § 43-22. In *Parker*, this court discussed the concept of invalidity and clarified that § 43-22 permits a trial court to correct both illegal sentences and sentences that were imposed in an illegal manner. Id., 837.

In the present case, the defendant alleged in his motion to correct that his sentence (1) was illegal because it constituted cruel and unusual punishment under the eighth amendment, as interpreted by *Miller*, (2) was imposed in an illegal manner because the trial court did not consider the mitigating factors of youth in sentencing him to the equivalent of life without parole, and (3) was illegal because it did not afford him a reasonable opportunity for parole. The defendant now concedes that his third and final claim has been resolved by the enactment of P.A. 15-84, which ensures that he is eligible for parole. We therefore turn to whether the trial court had jurisdiction over the motion to correct on the basis of the allegations that the sentence was illegal and imposed in an illegal manner in violation of the eighth amendment.[6]

We apply plenary review in addressing this question of law. See id., 840. "The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Internal quotation marks omitted.) *State* v. *Taylor*, 91 Conn. App. 788, 791, 882 A.2d 682, cert. denied, 276 Conn. 928, 889 A.2d 819 (2005). At issue is whether the defendant has raised a colorable claim within the scope of Practice Book § 43-22 "that would, if the merits of the claim were reached and decided in the defendant's favor, require correction of a sentence." Id., 793. In the absence of a colorable claim requiring correction, the trial court has no jurisdiction to modify the sentence. See id., 793–94.

When the defendant filed his motion to correct in 2014, he was serving a sentence of sixty-five years,

which is equivalent to life imprisonment, and he was not eligible for parole. Because *Miller* prohibits a trial court from sentencing a juvenile convicted of murder to life imprisonment without parole unless the court has considered youth related mitigating factors, the defendant's allegation that the trial court failed to give due consideration to these factors raised a colorable claim of invalidity that, if decided in his favor, would require resentencing. See, e.g., *State* v. *Williams-Bey*, supra, 167 Conn. App. 760–61.

Following the enactment of P.A. 15-84, however, the defendant is now eligible for parole and can no longer claim that he is serving a sentence of life imprisonment, or its equivalent, without parole. The eighth amendment, as interpreted by *Miller*, does not prohibit a court from imposing a sentence of life imprisonment *with* the opportunity for parole for a juvenile homicide offender, nor does it require the court to consider the mitigating factors of youth before imposing such a sentence. See *Miller* v. *Alabama*, supra, 132 S. Ct. 2463–69. Rather, under *Miller*, a sentencing court's obligation to consider youth related mitigating factors is limited to cases in which the court imposes a sentence of life, or its equivalent, *without* parole. Id., 2469. As a result, the defendant's sentence no longer falls within the purview of *Miller*, *Riley* and *Casiano*, which require consideration of youth related mitigating factors only if the sentencing court imposes a sentence of life without parole. See *State* v. *Riley*, supra, 315 Conn. 658; see also *State* v. *Casiano*, supra, 317 Conn. 73.

This conclusion is consistent with the law in other jurisdictions that have considered this issue and have concluded that *Miller* simply does not apply when a juvenile's sentence provides an opportunity for parole; that is, a sentencing court has no constitutionally founded obligation to consider any specific youth related factors under such circumstances.[7] Moreover, the reasoning in these cases is consistent with the United States Supreme Court's decision in *Montgomery*, in which the court clarified that the rights delineated in *Graham* and *Miller* apply retroactively to individuals who have been sentenced to life imprisonment without parole. See *Montgomery* v. *Louisiana*, supra, 136 S. Ct. 736. The court also indicated that, for those who had received such a sentence without consideration of youth related mitigating factors, resentencing was not necessary because constitutional concerns would be satisfied by providing such individuals with an opportunity for parole. See id.

Because *Miller* and *Riley* do not require a trial court to consider any particular mitigating factors associated with a juvenile's young age before imposing a sentence that includes an opportunity for parole, the defendant can no longer allege, after the passage of P.A. 15-84, that his sentence was imposed in an illegal manner on

the ground that the trial court failed to take these factors into account. Such an allegation is an essential predicate to the trial court's jurisdiction to correct the sentence. An allegation that the court failed to consider youth related factors before imposing a sentence of life *with parole* is not sufficient to establish a jurisdictional basis for correcting a sentence. See *State* v. *Parker*, supra, 295 Conn. 846–47 (allegation that contents of presentence investigation report had not been reviewed with defendant did not provide basis for jurisdiction to correct sentence when defendant did not allege that report had been withheld from counsel, that purported inaccuracies were materially false or that court relied on inaccuracies in imposing sentence); *State* v. *Taylor*, supra, 91 Conn. App. 794 (court lacked jurisdiction when motion failed to state claim requiring correction of sentence). We therefore conclude that the defendant has not raised a colorable claim of invalidity that, if decided in his favor, would require resentencing.[8]

In reaching this conclusion, we are mindful of the general principle that "jurisdiction once acquired is not lost or divested by subsequent events." (Internal quotation marks omitted.) *RAL Management, Inc.* v. *Valley View Associates*, 278 Conn. 672, 687, 899 A.2d 586 (2006). This general rule, however, is not without exceptions. In *State* v. *Taylor*, supra, 91 Conn. App. 788, for example, Judge Schaller recognized in his concurring opinion that a sentencing court could be divested of its jurisdiction to correct a sentence when the "claims before the trial court have been altered so that the sole issue before the court is one that the court lacks jurisdiction to hear." Id., 800 (*Schaller, J.*, concurring). In the present case, the legal landscape concerning juvenile sentencing laws has changed so significantly that the remaining claims, which would have required resentencing when the motion to correct was filed, no longer require resentencing. In view of the long-standing principle that challenges to the trial court's subject matter jurisdiction may be raised at any time by either party or the court; e.g., *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 149, 84 A.3d 840 (2014); and the established rule that a sentencing court's jurisdiction to correct a sentence is limited to sentences that are invalid; *State* v. *Parker*, supra, 295 Conn. 835; we conclude that the trial court no longer possesses jurisdiction over the defendant's motion to correct.

We further emphasize that the defendant is not entitled to resentencing under P.A. 15-84, § 2, codified as amended at General Statutes (Supp. 2016) § 54-91g, which requires the trial court to consider youth related mitigating factors before sentencing a juvenile convicted of a class A or B felony. The defendant does not expressly claim that this provision applies to him retroactively, and, in any event, the text of P.A. 15-84, § 2, does not support any such assertion. There are ten

sections in P.A. 15-84, four of which specify that they are "[e]ffective October 1, 2015, and applicable to any person convicted prior to, on or after said date." (Emphasis omitted.) P.A. 15-84, §§ 6 through 9. In contrast, P.A. 15-84, § 2, provides it is "[e]ffective October 1, 2015," indicating that the legislature did not intend for this section to apply retroactively. Moreover, there is nothing in the text of General Statutes (Supp. 2016) § 54-91g or the legislative history of P.A. 15-84 to suggest that the legislature intended that all juveniles convicted of a class A or B felony who were sentenced without consideration of the age related mitigating factors identified in *Miller* would be resentenced. In sum, even if the defendant had alleged that his sentence was imposed in an illegal manner because the trial court failed to adhere to the requirements of P.A. 15-84, § 2, he would not be able to demonstrate that that provision applies to him.[9]

Finally, we are not persuaded by several arguments advanced by the defendant. First, the defendant contends that *Montgomery* "does not limit Connecticut to using parole eligibility as the sole remedy for *Miller* violations" and refers to the legislature's decision to require both "a *Miller* compliant sentencing hearing *and* an opportunity for parole" to suggest that resentencing is required. (Emphasis in original.) Although we agree that the text of P.A. 15-84 reflects the legislature's intent to require both of these elements, as we have explained, the text indicates that the requirement of a *Miller* compliant sentencing hearing does not apply retroactively. In the absence of evidence to the contrary, we reject this argument.

Second, the defendant argues that "*Montgomery* does not . . . supersede the final and controlling precedent in *Riley* and *Casiano*, which provide a new sentencing hearing as the remedy for sentences that are illegal or were imposed in an illegal manner . . . ." As we noted in this opinion, however, neither *Riley* nor *Casiano* requires the sentencing court to consider specific youth related mitigating factors before imposing a sentence of life *with an opportunity for parole*. Furthermore, the defendant's entitlement to parole consideration under P.A. 15-84 defeats any claim challenging the propriety of his original sentence insofar as that sentence precluded any possibility of an early release. In short, because the defendant cannot raise a viable claim that his sentence was illegal or was imposed in an illegal manner under *Riley* and *Casiano*, neither case requires resentencing.

Third, the defendant posits that this court previously recognized that "parole legislation would not appropriately address *Miller* claims" when it decided *Riley* and *Casiano* and acknowledged that *Graham* and *Miller* claims are separate and distinct. The fact that this court drew a distinction between those claims, however, simply does not support the proposition that this court previously determined that an opportunity for parole

is insufficient to remedy a trial court's failure to account for the mitigating factors of youth.

Because the defendant's remaining claims in his motion to correct no longer fall within the purview of *Miller*, the motion fails to allege a claim that, if proven, would require resentencing. In the absence of a viable claim that the sentence is illegal or was imposed in an illegal manner, the sentencing court lacks jurisdiction to correct the sentence.

The trial court's dismissal of the defendant's motion to correct an illegal sentence is affirmed.

In this opinion the other justices concurred.

[1] Section 1 of No. 15-84 of the 2015 Public Acts, codified at General Statutes (Supp. 2016) § 54-125a, provides in relevant part: "(f) (1) Notwithstanding the provisions of subsections (a) to (e), inclusive, of this section, a person convicted of one or more crimes committed while such person was under eighteen years of age, who is incarcerated on or after October 1, 2015, and who received a definite sentence or total effective sentence of more than ten years for such crime or crimes prior to, on or after October 1, 2015, may be allowed to go at large on parole in the discretion of the panel of the Board of Pardons and Paroles for the institution in which such person is confined, provided (A) if such person is serving a sentence of fifty years or less, such person shall be eligible for parole after serving sixty per cent of the sentence or twelve years, whichever is greater, or (B) if such person is serving a sentence of more than fifty years, such person shall be eligible for parole after serving thirty years. Nothing in this subsection shall limit a person's eligibility for parole release under the provisions of subsections (a) to (e), inclusive, of this section if such person would be eligible for parole release at an earlier date under any of such provisions.

"(2) The board shall apply the parole eligibility rules of this subsection only with respect to the sentence for a crime or crimes committed while a person was under eighteen years of age. . . .

"(3) Whenever a person becomes eligible for parole release pursuant to this subsection, the board shall hold a hearing to determine such person's suitability for parole release. . . .

* * *

"(5) After such hearing, the board shall articulate for the record its decision and the reasons for its decision. If the board determines that continued confinement is necessary, the board may reassess such person's suitability for a new parole hearing at a later date to be determined at the discretion of the board, but not earlier than two years after the date of its decision.

"(6) The decision of the board under this subsection shall not be subject to appeal. . . ."

Section 2 of No. 15-84 of the 2015 Public Acts, codified as amended at General Statutes (Supp. 2016) § 54-91g, provides in relevant part: "(a) If the case of a child . . . is transferred to the regular criminal docket of the Superior Court . . . and the child is convicted of a class A or B felony pursuant to such transfer, at the time of sentencing, the court shall:

"(1) Consider, in addition to any other information relevant to sentencing, the defendant's age at the time of the offense, the hallmark features of adolescence, and any scientific and psychological evidence showing the differences between a child's brain development and an adult's brain development; and

"(2) Consider, if the court proposes to sentence the child to a lengthy sentence under which it is likely that the child will die while incarcerated, how the scientific and psychological evidence described in subdivision (1) of this subsection counsels against such a sentence.

"(b) Notwithstanding the provisions of section 54-91a of the general statutes, no presentence investigation or report may be waived with respect to a child convicted of a class A or B felony. . . .

"(c) Whenever a child is sentenced pursuant to subsection (a) of this section, the court shall indicate the maximum period of incarceration that may apply to the child and whether the child may be eligible to apply for release on parole pursuant to subdivision (1) of subsection (f) of section 54-125a of the general statutes, as amended by this act. . . ."

[2] On appeal, this court agreed with the defendant's claim that a separate conviction under § 53-202k was improper because that statute is a sentence enhancement provision and not a distinct offense. *State* v. *Delgado*, supra, 247 Conn. 633. The defendant conceded, however, that the sentencing court properly had imposed a five year consecutive sentence pursuant to § 53-202k. Id. The case was remanded "with direction to vacate the defendant's conviction under § 53-202k and to resentence the defendant to a total effective term of imprisonment of sixty-five years . . . ." Id., 634.

[3] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

[4] The eighth amendment to the United States constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

On appeal, the defendant has not raised or briefed any separate arguments or claims under the state constitution. Because, for purposes of this appeal, the defendant does not contend that the state constitution affords him any greater rights than he possesses under the federal constitution, we limit our analysis to his federal constitutional claim. See, e.g., *Barros* v. *Barros*, 309 Conn. 499, 507 n.9, 72 A.3d 367 (2013).

[5] A *Miller* claim or *Miller* violation refers to the sentencing court's obligation to consider a juvenile's age and circumstances related to age at an individualized sentencing hearing as mitigating factors before imposing a sentence of life imprisonment without parole. See *Miller* v. *Alabama*, supra, 132 S. Ct. 2469. A *Graham* claim or *Graham* violation refers to the sentencing court's obligation to provide a meaningful opportunity for parole to a juvenile who is sentenced to life imprisonment. See *Graham* v. *Florida*, supra, 560 U.S. 82. The defendant initially raised a *Graham* claim but acknowledges that that claim has been addressed by the enactment of P.A. 15-84, § 1.

[6] Because the defendant was not sentenced pursuant to a mandatory sentencing scheme, the trial court concluded that the holding in *Miller* did not apply to the defendant's case and dismissed the motion to correct for lack of jurisdiction. The state now concedes, and we agree, that the trial court incorrectly concluded that it lacked jurisdiction over the defendant's motion to correct at that time. The motion, at that point, raised a viable claim by alleging that a sentence of life imprisonment without parole had been imposed without consideration of youth related mitigating factors. As we discuss subsequently in this opinion, however, the defendant is now eligible for parole and can no longer claim that he is serving a sentence of life imprisonment without parole. We therefore conclude that the trial court no longer possesses jurisdiction over the defendant's motion to correct.

[7] See *Fisher* v. *Haynes*, United States District Court, Docket No. C15-5747 (BHS) (W.D. Wn. September 30, 2016) (defendant sentenced to life imprisonment with parole was not entitled to relief under *Miller*); *People* v. *Cornejo*, 3 Cal. App. 5th 36, 67–68, 207 Cal. Rptr. 3d 366 (2016) (after legislation afforded defendant opportunity for parole, sentence imposed by trial court was no longer sentence of life without parole or functional equivalent and " 'no *Miller* claim arises,' " and same rationale applied to both mandatory and discretionary sentences); *State* v. *Tran*, 138 Haw. 298, 307, 378 P.3d 1014 (2016) (United States Supreme Court's "statements in *Montgomery* make clear that *Miller* does not require individualized sentencing or consideration of the mitigating factors of youth in every case involving a juvenile offender, but only [when] a sentence of life imprisonment without parole is imposed on a juvenile offender"); *State* v. *Cardeilhac*, 293 Neb. 200, 218, 876 N.W.2d 876 (2016) (*Miller* did not apply when defendant's sentence afforded opportunity for parole); *State* v. *Lasane*, New Jersey Superior Court, Appellate Division, Docket No. 06-02-00365 (September 28, 2016) (*Miller* does not apply to juvenile offender who retains prospect of parole within lifetime); *State* v. *Terrell*, Ohio Court of Appeals, Docket No. CR-13-581323-A (June 23, 2016) (declining to extend *Miller* to cases in which parole is afforded), appeal denied, Ohio Supreme Court, Docket No. 2016-Ohio-7854 (November 23, 2016); see also *State* v. *Williams-Bey*, supra, 167 Conn. App. 772.

[8] Our conclusion that the defendant does not need to be resentenced is also consistent with the Appellate Court's decision in *State* v. *Williams-Bey*, supra, 167 Conn. App. 744. In *Williams-Bey*, the Appellate Court engaged in a thorough analysis of whether an opportunity for parole satisfies the constitutional concerns discussed in *Miller* and concluded that it did. See id., 768, 780–81. Although this court does not follow the precise analytical path that the Appellate Court took in *Williams-Bey*, we fully agree that resentencing is not necessary.

[9] Although the text of P.A. 15-84 seems clear insofar as the retroactivity issue is concerned, to the extent that there is any ambiguity in the applicable statutory language, the pertinent legislative history clarifies that the legislature did not intend for this provision to apply retroactively. The limited discussion on this topic occurred before the Judiciary Committee. Attorney Robert Farr, a member of the working group of the Connecticut Sentencing

Commission, which helped craft the proposed legislative language, discussed how the legislation would affect previously sentenced individuals. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 2015 Sess., pp. 949, 955–56. He first mentioned this court's decision in *Riley*, in which the defendant in that case had been sentenced to 100 years in prison and then resentenced, and noted that, under the proposed legislation, "instead of having to worry about resentencing what would have happened is in [thirty] years, [twenty-one] years from now there will be a parole hearing and then that parole hearing would decide whether [the defendant in *Riley*] was going to be—get another parole hearing . . . . So it gave some resolution to this which was consistent we believe with the federal—with the [United States] Supreme Court cases." Id., p. 956, remarks of Attorney Farr.

—————————————————