******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JAMAAL COLTHERST
(AC 41314)

Alvord, Suarez and Pellegrino, Js.

*Syllabus*

The defendant, who had been convicted of numerous crimes in connection
with the shooting of the victim, appealed to this court from the judgment
of the trial court dismissing his motion to correct an illegal sentence.
The defendant, who was seventeen years old at the time of the shooting,
had been sentenced to a term of eighty-five years of imprisonment that
was to run consecutively to a sentence of life imprisonment without
the possibility of release that he was then serving as a result of a prior
criminal incident. The defendant claimed that he was entitled to be
resentenced because, inter alia, his original sentence constituted cruel
and unusual punishment in violation of the state and federal constitu-
tions in that the sentencing court imposed an effective life sentence
without having first considered his age and the hallmark characteristics
of youth. The trial court determined that it was precluded from granting
the defendant's motion to correct because our Supreme Court deter-
mined in *State* v. *Delgado* (323 Conn. 801) that a juvenile defendant who
received a sentence of more than ten years imprisonment and was
eligible for parole following the passage of No. 15-84 of the 2015 Public
Acts, which amended the statute (§ 54-125a) concerning parole eligibil-
ity, could no longer allege a violation of *Miller* v. *Alabama* (567 U.S.
460) on the basis of a sentencing court's alleged failure to consider the
defendant's status as a youth. On appeal, the defendant claimed, inter
alia, that his sentencing proceeding was merely an academic exercise
that contravened the intent of the legislature in eliminating the availabil-
ity of a capital felony for juvenile defendants and that he is still being
harmed because he has never been afforded a sentencing proceeding
in which the appropriate factors were considered. *Held* that the trial
court properly dismissed the defendant's motion to correct, as the sen-
tence imposed on him could not be considered illegal because any
alleged harm that resulted from the court's failure to consider his youth
and its attendant circumstances was remedied by his eligibility for parole
pursuant to P.A. 15-84: despite the defendant's claim that his two cases
were heavily intertwined and that *Delgado* was inapplicable because it
could be presumed that the sentencing court knew he previously had
been sentenced to life without the possibility of release, our Supreme
Court has made clear that § 54-125a provides an adequate remedy in
that the Board of Pardons and Paroles, at the appropriate time, will
consider, inter alia, his age and circumstances as of the date of his
crimes; moreover, the defendant was not entitled to resentencing, our
Supreme Court having determined in *State* v. *Williams-Bey* (333 Conn.
468) that parole eligibility is sufficient to cure any state constitutional vio-
lation.

Argued November 18, 2020—officially released May 25, 2021

*Procedural History*

Substitute information charging the defendant with
two counts each of the crimes of burglary in the first
degree, assault in the first degree, robbery in the first
degree and conspiracy to commit robbery in the first
degree, and with one count each of the crimes of kidnap-
ping in the first degree with a firearm, attempt to commit
murder, conspiracy to commit kidnapping in the first
degree with a firearm, conspiracy to commit burglary
in the first degree, conspiracy to commit assault in the
first degree, larceny in the first degree and conspiracy
to commit larceny in the first degree, brought to the
Superior Court in the judicial district of New Britain

and tried to the jury before *Espinosa, J.*; verdict and judgment of guilty, from which the defendant appealed to this court, *Schaller*, *Bishop* and *Hennessy, Js.*, which reversed the judgment in part and remanded the case for further proceedings; thereafter, the court, *Dewey, J.*, dismissed the defendant's motion to correct an illegal sentence, and the defendant appealed to this court. *Affirmed.*

*Michael W. Brown*, for the appellant (defendant).

*Melissa E. Patterson*, assistant state's attorney, with whom, on the brief, were *Brian Preleski*, state's attorney, and *David Clifton*, assistant state's attorney, for the appellee (state).

*Opinion*

SUAREZ, J. The defendant, Jamaal Coltherst, appeals from the judgment of the trial court dismissing his motion to correct an illegal sentence. The defendant claims that the court erred in dismissing his motion to correct because his sentence constitutes cruel and unusual punishment under the eighth amendment to the United States constitution and article first, §§ 8 and 9, of the Connecticut constitution in light of the fact that the criminal court imposed an effective sentence of life imprisonment without having conducted an individualized sentencing proceeding in which the court would consider his age and the hallmark characteristics of youth. We disagree and, accordingly, affirm the judgment of the trial court.

The following procedural history is relevant to this appeal. In 2002, following a jury trial, the defendant was convicted of the following offenses: kidnapping in the first degree with a firearm in violation of General Statutes § 53a-92a, burglary in the first degree in violation of General Statutes § 53a-101 (a) (1), burglary in the first degree in violation of § 53a-101 (a) (2), attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a, assault in the first degree in violation of General Statutes § 53a-59 (a) (1), assault in the first degree in violation of § 53a-59 (a) (2), robbery in the first degree in violation of General Statutes § 53a-134 (a) (1), robbery in the first degree in violation of § 53a-134 (a) (2), conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (1), conspiracy to commit robbery in the first degree in violation of §§ 53a-48 and 53a-134 (a) (2), conspiracy to commit kidnapping in the first degree with a firearm in violation of §§ 53a-48 and 53a-92a, conspiracy to commit burglary in the first degree in violation of §§ 53a-48 and 53a-101, conspiracy to commit assault in the first degree in violation of §§ 53a-48 and 53a-59 (a) (1), larceny in the first degree in violation of General Statutes § 53a-122 (a) (3) and conspiracy to commit larceny in the first degree in violation of §§ 53a-48 and 53a-122 (a) (3). *State* v. *Coltherst*, 87 Conn. App. 93, 95–96 n.1, 864 A.2d 869, cert. denied, 273 Conn. 919, 871 A.2d 371 (2005).

This court's decision affirming the judgment of conviction following the defendant's direct appeal set forth the facts underlying the offenses. "On October 19, 1999, the defendant, [who was seventeen years old], Carl Johnson and Rashad Smith were sitting in a stolen black Honda Accord near 85 Wolcott Hill Road in Wethersfield. The trio had smoked marijuana. Sometime after darkness fell, the victim, Michael Clarke, returned to Camilleri and Clarke Associates, Inc., the insurance brokerage firm located there, of which he was an owner. He had left his motor vehicle, a black Lincoln Mark VIII valued at approximately $28,000, in the firm's parking

lot. After the victim had been in the building for some time, his dog began to bark, and so the victim went outside. After the victim left the building, he was accosted by the defendant and Johnson. The defendant wore a red sweatshirt or parka. The victim was instructed to turn over the keys to his vehicle. One of the men pointed a gun at the victim, and told him to go back into the building and to his office.

"In the office, while one of the men continued to point the gun at the victim, the other held the victim. The defendant and Johnson took the victim's laptop computer and credit card. They threatened the victim and ordered him to provide the access code for the card so that they could use it to obtain cash. Johnson took the computer while the defendant took the credit card. The defendant and Johnson stated that they were going to take the victim to the car, and after he protested and resisted, he was struck twice in the face with the gun. The victim was pushed outside, continued to struggle with the two men and broke away from them before being forced into the car. The victim started to flee and called out for help, but was soon tackled by Johnson. The victim then struggled with the defendant, who took out a .22 caliber Beretta and shot the victim in the head. The defendant and Johnson fled the scene in the victim's Lincoln while Smith drove the Honda Accord.

"Oscar Rivera, a Wethersfield police officer, arrived at the scene after being notified of the assault. He found the victim lying on the ground in the parking lot, which was otherwise empty. At that time, the victim was responsive, but had suffered visible injuries. Medical [personnel] subsequently transferred the victim to Hartford Hospital for treatment. The victim was hospitalized for nine to ten days and then was transferred to a rehabilitation facility for an additional seven weeks of therapy.

"Leslie Higgins, an employee of United Services Automobile Association, the company that issued the victim's credit card, testified that on the night of the shooting, there were several attempts at various automatic teller machines to obtain cash with the card taken by the defendant. The first three attempts were declined due to an incorrect access code, and the fourth failed as a result of an automatic [lockout] due to the previous incorrect access codes. Higgins further testified that the defendant's card was used on October 21, 1999, to make several purchases, totaling several hundred dollars, at various stores in Manchester. Eventually, a hold was placed on the account due to suspected fraudulent activity.

"On October 24, 1999, Sergeant Robert Whitty of the Avon [P]olice [D]epartment stopped a black Honda Accord carrying the defendant, Johnson, Smith and Damion Kelly. A search of that vehicle revealed the victim's credit card, credit card receipts that matched

the victim's credit card, items purchased with the victim's credit card and a .22 caliber bullet that subsequently was determined to have been of the same caliber used in the shooting. Additionally, after searching the defendant's residence, the police recovered a pair of the defendant's boots that were stained with the victim's blood, a computer case containing the victim's business card and a red jacket." (Footnotes omitted.) *State* v. *Coltherst*, supra, 87 Conn. App. 96–98.

On June 10, 2002, the trial court, *Espinosa, J.*, sentenced the defendant to a term of eighty-five years of incarceration to run consecutively to a sentence that he was then serving as a result of a separate criminal incident in East Hartford (East Hartford case) four days prior to the incident underlying the charges in the present case.[1] At the time of sentencing in the present case, the defendant already had been sentenced to a term of life imprisonment without the possibility of release plus seventy-one years in the East Hartford case. On direct appeal in the present case, this court affirmed the judgment of the trial court but remanded the case to the trial court with direction for the court to merge the "conviction of the six conspiracy offenses and vacate the sentences for five of them" on double jeopardy grounds. Id., 113. Following the proceedings on remand, the length of the total effective sentence remained unchanged after the court merged the conviction of the six conspiracy offenses.

On November 17, 2017, the defendant filed a motion to correct his sentence of eighty-five years in the present case on the ground that the sentence imposed was illegal. In his memorandum of law that was part of his motion, the defendant alleged, inter alia, that his eighty-five year sentence constituted cruel and unusual punishment in violation of the state and federal constitutions because, at sentencing, the court failed to consider his status as a youth at the time of the commission of the crimes. Specifically, the defendant alleged that the trial court "understood that [he] was already subjected to a life without the possibility of release sentence" in the East Hartford case when it imposed his sentence and, therefore, did not take into consideration his youth and the attendant circumstances of youth. The defendant argued that, under these particular circumstances, the sentencing proceeding was a "mere academic exercise . . . ." On that ground, he attempted to distinguish the present case from other cases in which sentences imposed on youthful offenders have been upheld, such as *State* v. *Boyd*, 323 Conn. 816, 820–21, 151 A.3d 355 (2016) (defendant no longer had colorable claim under *Miller* v. *Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), because he became eligible for parole following enactment of Public Acts 2015, No. 15-84, § 1 (P.A. 15-84), and "consider[ation] of youth related mitigating factors [is required] only if the sentencing court imposes a sentence of life [or its equivalent] with-

out parole" (internal quotation marks omitted)), and *State* v. *Delgado*, 323 Conn. 801, 810–11, 151 A.3d 345 (2016) (same).

The court, *Dewey, J.*, heard argument on the motion on December 5, 2017. On December 7, 2017, the court dismissed the defendant's motion on the basis of P.A. 15-84, codified at General Statutes § 54-125a,[2] our Supreme Court's holding in *State* v. *Delgado*, supra, 323 Conn. 810–11, and this court's decision in *State* v. *Williams-Bey*, 167 Conn. App. 744, 747, 144 A.3d 467 (2016), aff'd, 333 Conn. 468, 215 A.3d 711 (2019). The court noted that it was precluded from granting the defendant's motion under *Delgado* because *Delgado* established that a juvenile defendant who received a sentence of more than ten years of incarceration and is eligible for parole could no longer allege a *Miller* violation that was based on a sentencing court's alleged failure to consider the defendant's status as a youth, given that the enactment of P.A. 15-84 made such defendants eligible for parole. Thus, the court reasoned, *Miller* was inapplicable because it applied to juveniles who were sentenced to life imprisonment, or its functional equivalent, without the possibility of release. On January 29, 2018, the defendant filed the present appeal.[3]

On September 20, 2018, this court entered an order, sua sponte, staying all remaining briefing in the present appeal pending our Supreme Court's disposition of *State* v. *Williams-Bey*, 333 Conn. 468, 215 A.3d 711 (2019), and *State* v. *McCleese*, 333 Conn. 378, 215 A.3d 1154 (2019). On August 23, 2019, our Supreme Court issued its decisions in *Williams-Bey* and *McCleese*. This court then ordered the parties to address the impact of *Williams-Bey* and *McCleese* on this appeal in the state's brief and in the defendant's reply brief. We will set forth additional facts and procedural history where necessary.

On appeal, the defendant reiterates his argument that the circumstances of his case make *Delgado* inapplicable. The defendant argues that his sentencing proceeding resembled a sentencing proceeding for a capital felony, which contravened the intent of the legislature in eliminating the availability of a capital "felony for juvenile defendants." Additionally, the defendant argues that, because the court had knowledge of his initial sentence of life without the possibility of parole in the East Hartford case, the sentencing in the present case was merely an "academic exercise" and, therefore, he is still being harmed because he has never been afforded a sentencing proceeding in which the appropriate factors were taken into consideration. Moreover, relying on the fact that the initial sentence of life without the possibility of parole in the East Hartford case was changed to a term of eighty years of incarceration after the defendant's motion to correct in that case was

granted; see footnote 1 of this opinion; the defendant argues that the present case requires resentencing for the reason that the East Hartford case and this case are "heavily" intertwined.[4]

In response, the state argues that the court correctly dismissed the defendant's motion to correct an illegal sentence because the defendant failed to raise a colorable claim that is within the scope of Practice Book § 43-22.[5] Particularly, the state argues that Supreme Court precedent requires us to conclude that the defendant's sentence does not violate the federal constitution because our Supreme Court in *State* v. *Williams-Bey*, supra, 333 Conn. 474, determined that, if a juvenile offender is eligible for parole, a court has no jurisdiction to hear a motion to correct an illegal sentence that is based on an alleged *Miller* violation.[6] We agree with the state.

We begin by setting forth the standard of review and governing legal principles. "We apply plenary review in addressing this question of law." *State* v. *Delgado*, supra, 323 Conn. 810. "An illegal sentence is essentially one [that] either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is inherently contradictory. . . . Sentences imposed in an illegal manner have been defined as being within the relevant statutory limits but . . . imposed in a way which violates the defendant's right . . . to be addressed personally at sentencing and to speak in mitigation of punishment . . . or his right to be sentenced by a judge relying on accurate information or considerations solely in the record . . . ." (Internal quotation marks omitted.) *State* v. *Williams-Bey*, supra, 167 Conn. App. 760.

"In *Miller* v. *Alabama*, [supra, 567 U.S. 460], the United States Supreme Court held that the [e]ighth [a]mendment [to the federal constitution, which prohibits cruel and unusual punishment] forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders. . . . Our Supreme Court has interpreted *Miller* to [prohibit] a trial court from sentencing a juvenile convicted of murder to life imprisonment without parole unless the court has considered youth related mitigating factors . . . ." (Citation omitted; internal quotation marks omitted.) *Watts* v. *Commissioner of Correction*, 194 Conn. App. 558, 571, 221 A.3d 829 (2019), cert. denied, 334 Conn. 919, 222 A.3d 514 (2020).

"In response to the *Miller* decision, the legislature enacted [P.A. 15-84], which was later codified in . . . § 54-125a (f) and that provides parole eligibility for juvenile offenders who are serving a sentence of greater than ten years of incarceration.

"Subsequently, our Supreme Court addressed *Miller* and, in a series of cases [such as *Delgado*], first held

that a juvenile offender serving a life sentence of imprisonment, or its functional equivalent, without the possibility of parole can no longer make a colorable claim that his or her sentence is illegal under the eighth amendment to the United States constitution and *Miller*—even if the trial court failed to consider the mitigating factors of youth—because juvenile offenders are now eligible for parole under P.A. 15-84. *State* v. *Delgado*, supra, 323 Conn. 809–12.

"In *McCleese*, [t]he defendant was seventeen years old when he and a partner shot and killed one victim and injured another. . . . The defendant received a total effective sentence of eighty-five years of imprisonment without eligibility for parole . . . . [T]here [was] no express reference in the record that [the sentencing court] specifically considered youth as a mitigating factor, which, at the time, was not a constitutional requirement. . . .

"Following our Supreme Court's post-*Miller* decisions, the defendant in *McCleese* filed a motion to correct an illegal sentence. He grounded his claims in the eighth amendment and article first, §§ 8 and 9, of the state constitution. . . . These claims required our Supreme Court to consider whether the legislature may remedy the constitutional violation with parole eligibility. . . . Our Supreme Court held that parole eligibility under P.A. 15-84, § 1, is an adequate remedy for a *Miller* violation under our state constitution just as it is under the federal constitution." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Watts* v. *Commissioner of Correction*, supra, 194 Conn. App. 571–72.

Moreover, our Supreme Court established in *Williams-Bey* that "parole eligibility under § 54-125a (f) adequately remedied any *Miller* violation under the Connecticut constitution, noting that, because the defendant in *Williams-Bey* was parole eligible, he was not entitled to resentencing under the state constitution." Id., 573–74. In essence, the court in *Williams-Bey* determined that, even if a court fails to consider expressly "the youth related factors required by the United States constitution for cases involving juveniles who have been sentenced to life imprisonment without the possibility of release"; (internal quotation marks omitted) id., 573; parole eligibility under § 54-125a (f)[7] is sufficient to cure "any state constitutional violation . . . ."[8] (Internal quotation marks omitted.) Id.

In an attempt to distinguish the present case from *Delgado*, *McCleese* and *Williams-Bey*, the defendant argues that, unlike the circumstances at issue in those cases, in the present case, we may presume that the sentencing court was affected by its knowledge of his prior sentence of life without the possibility of release that was imposed in the East Hartford case and, thus, that it did not consider the appropriate factors concern-

ing his status as a youth. That argument is unpersuasive because "[o]ur Supreme Court precedent in *Delgado*, *Williams-Bey* and *McCleese* makes clear that, in light of § 54-125a, [a defendant] can no longer prevail on a claim that his sentence was imposed in an illegal manner when a court fails to consider the mitigating factors of youth when imposing the equivalent of a life sentence because § 54-125a currently provides an adequate remedy." Id., 574. In the present case, the defendant is eligible for parole pursuant to § 54-125a and, therefore, the "panel of the Board of Pardons and Paroles for the institution in which" the defendant is confined; General Statutes § 54-125a (f) (1); will, at the appropriate time, consider the defendant's "background and history, as demonstrated by factors, including, but not limited to . . . *the age and circumstances of* [*the defendant*] *as of the date of the commission of the crime or crimes* . . . ." (Emphasis added.) General Statutes § 54-125a (f) (4) (C).

Thus, the defendant's claim that his youth was not considered at sentencing is unavailing, as any alleged harm has been remedied by § 54-125a, as delineated in *Watts* v. *Commissioner of Correction*, supra, 194 Conn. App. 574. Therefore, the sentence imposed on the defendant cannot be considered an illegal sentence. Accordingly, the court properly dismissed the defendant's motion to correct an illegal sentence.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In the East Hartford case, "[t]he defendant and Johnson had stolen [a] car in East Hartford and, on October 15, 1999, after committing several additional crimes, Johnson shot and killed Kyle Holden. . . . As a result of his participation in that criminal activity, the defendant was sentenced to a total effective term of life imprisonment without the possibility of release followed by seventy-one years [of] imprisonment." (Citation omitted.) *State* v. *Coltherst*, supra, 87 Conn. App. 96 n.2. After the decision of the United States Supreme Court in *Miller* v. *Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), the defendant filed a motion to correct an illegal sentence in the East Hartford case, seeking to have his sentence of life without the possibility of release vacated and a resentencing in accordance with the principles enunciated in *Miller*. The court, *Dewey, J.*, granted the defendant's motion to correct on May 23, 2017, vacated the sentence of life without the possibility of release plus seventy-one years, and resentenced him to a total effective term of eighty years of incarceration. The resentencing in the East Hartford case occurred after the defendant was sentenced in the present matter.

[2] See footnote 7 of this opinion.

[3] During oral argument before this court, the defendant abandoned his argument, as set forth in his appellate brief, that *Delgado* and its progeny were wrongly decided and that "the opportunity to apply for parole does not provide an adequate and satisfactory remedy to the imposition of a cruel and unusual punishment in violation of *Miller* [v. *Alabama*, supra, 567 U.S. 460]." Accordingly, we need not address the merits of that aspect of his claim.

[4] We note that the defendant raises a number of additional arguments in support of his claim that the court improperly denied his motion to correct. He claims that the court improperly imposed an effective life sentence solely for the " 'satisfaction' " of the victim. He also claims that the court's imposition of an eighty-five year sentence for a nonhomicide offense is inappropriate for a juvenile defendant. Additionally, the defendant claims that the "circumstances of his initial sentencing render[ed] the sentencing outcome so unreliable as to run afoul of [his] right to due process under

the fourteenth amendment to the United States constitution, and article [first], §§ 8 and 9, of the Connecticut constitution." The defendant roots his due process claim in what he alleges was an unreliable sentence. Finally, the defendant for the first time, in his reply brief, also claims that the court improperly failed to undertake any individualized consideration of him at the time of sentencing because the court's sentence was based on the incorrect premise that the sentence imposed would be of no consequence in light of the fact that, in the East Hartford case, he had received a sentence of life without the possibility of release. None of these grounds was raised before the trial court in connection with the defendant's motion to correct and, consequently, the court did not address them in its ruling on the motion to correct. We will not consider them here.

"It is axiomatic that issues not properly raised before the trial court ordinarily will not be considered on appeal." *State* v. *Benedict*, 313 Conn. 494, 505, 98 A.3d 42 (2014); see also Practice Book § 60-5. To the extent that the defendant seeks to prevail with respect to these unpreserved claims under the bypass doctrine of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), we observe that they are not amenable to *Golding* review. "*Golding* is a narrow exception to the general rule that an appellate court will not entertain a claim that has not been raised in the trial court. The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party. . . . *Golding* strikes an appropriate balance between . . . competing interests: the defendant may raise . . . a [meritorious] constitutional claim on appeal, and the appellate tribunal will review it, but only if the trial court record is adequate for appellate review." (Internal quotation marks omitted.) *State* v. *Elson*, 311 Conn. 726, 749, 91 A.3d 862 (2014).

"This court [however] previously has concluded that *Golding* review is not warranted [when] a defendant, on appeal, raises a challenge to the legality of his sentence that was not presented in his underlying motion to correct. . . . Our reason for this determination rests on the notion that the judicial authority to consider a motion to correct an illegal sentence lies with the trial court and not with an appellate court. . . . Specifically, in [*State* v. *Starks*, 121 Conn. App. 581, 591–92, 997 A.2d 546 (2010)], this court noted that [t]he judicial authority may at any time correct an illegal sentence . . . . Our Supreme Court has interpreted the term judicial authority, as used in Practice Book § 43-22, to refer to the trial court, not the appellate courts of this state. . . . Furthermore, the defendant has the right, at any time, to file a motion to correct an illegal sentence and raise [his unpreserved] claim[s] before the trial court." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Rivera*, 177 Conn. App. 242, 277, 172 A.3d 260 (2017), cert. denied, 333 Conn. 937, 218 A.3d 1046 (2019). As such, *Golding* review is unwarranted in the present case. See id., 278.

[5] General Statutes § 43-22 provides that "[t]he judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

[6] As noted previously, *Miller* established that a juvenile offender cannot be sentenced to life imprisonment, or its equivalent, without the possibility of parole unless there is a consideration of "youth related mitigating factors . . . ." *State* v. *Boyd*, supra, 323 Conn. 821.

[7] General Statutes § 54-125a (f) provides in relevant part that "(1) . . . a person convicted of one or more crimes committed while such person was under eighteen years of age, who is incarcerated on or after October 1, 2015, and who received a definite sentence or total effective sentence of more than ten years for such crime or crimes prior to, on or after October 1, 2015, may be allowed to go at large on parole in the discretion of the panel of the Board of Pardons and Paroles for the institution in which such person is confined, provided (A) if such person is serving a sentence of fifty years or less, such person shall be eligible for parole after serving sixty per cent of the sentence or twelve years, whichever is greater, or (B) if such person is serving a sentence of more than fifty years, such person shall be eligible for parole after serving thirty years. . . .

"(2) The board shall apply the parole eligibility rules of this subsection only with respect to the sentence for a crime or crimes committed while a person was under eighteen years of age. . . .

"(3) Whenever a person becomes eligible for parole release pursuant to

this subsection, the board shall hold a hearing to determine such person's suitability for parole release. . . .

"(4) After such hearing, the board may allow such person to go at large on parole with respect to any portion of a sentence that was based on a crime or crimes committed while such person was under eighteen years of age if the board finds that such parole release would be consistent with the factors set forth in subdivisions (1) to (4), inclusive, of subsection (c) of section 54-300 and if it appears, from all available information, including, but not limited to, any reports from the Commissioner of Correction, that (A) there is a reasonable probability that such person will live and remain at liberty without violating the law, (B) the benefits to such person and society that would result from such person's release to community supervision substantially outweigh the benefits to such person and society that would result from such person's continued incarceration, and (C) such person has demonstrated substantial rehabilitation since the date such crime or crimes were committed considering such person's character, background and history, as demonstrated by factors, including, but not limited to, such person's correctional record, *the age and circumstances of such person as of the date of the commission of the crime or crimes*, whether such person has demonstrated remorse and increased maturity since the date of the commission of the crime or crimes, such person's contributions to the welfare of other persons through service, such person's efforts to overcome substance abuse, addiction, trauma, lack of education or obstacles that such person may have faced as a child or youth in the adult correctional system, the opportunities for rehabilitation in the adult correctional system and the overall degree of such person's rehabilitation considering the nature and circumstances of the crime or crimes.

"(5) After such hearing, the board shall articulate for the record its decision and the reasons for its decision. If the board determines that continued confinement is necessary, the board may reassess such person's suitability for a new parole hearing at a later date to be determined at the discretion of the board, but not earlier than two years after the date of its decision. . . ." (Emphasis added.)

[8] Our Supreme Court "has interpreted *Miller* to apply not only to mandatory sentences for the literal life of the offender, but also to discretionary sentences and sentences that result in imprisonment for the 'functional equivalent' of an offender's life." *State* v. *Williams-Bey*, supra, 333 Conn. 471–72. Thus, *Miller* applies to the sentence imposed on the defendant in the present case because he was sentenced to a term of eighty-five years of incarceration.

--------------------------------